## Wooldridge v. Wooldridge et al.

(Decided May 10, 1929.)

H. C. KENNEDY, W. B. MORROW and KENNEDY & JONES for appellant.

C. L. TARTER and B. J. BETHURUM for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Reversing.

The petition of Mrs. Wooldridge having been dismissed, by the trial court, she has appealed.

### THE FACTS.

On May 31, 1927, after a courtship of many years, and an engagement of five years, J. T. Wooldridge married Miss Eva Collier. On April 23, 1928, she awoke to find that her husband had abandoned her, had left the

state, and he has since so remained. A survey of the situation showed that her husband had not only wrecked her home, but had apparently wrecked his estate. Before his marriage to her, J. T. Wooldridge had owned some land in Pulaski county, which we shall refer to as the Gadberry land. He had owned a piece of property in Somerset, which we shall refer to as the Jasper street property, and had owned 10 shares of the capital stock of the Citizens' National Bank of Somerset, which we shall refer to as the bank stock. She found that without her knowledge or consent, he had conveyed to G. E. Gadberry this Gadberry property, had conveyed to E. R. Wooldridge the Jasper street property, and had transferred to him the bank stock. She further found that her husband, when he absconded, had taken with him certain diamond rings belonging to her. She sued her husband for divorce. She asked to recover the value of these diamond rings; made Gadberry and E. R. Wooldridge parties to that suit; asked to have the transfers made to them canceled as fraudulent; to subject that property to the payment of alimony, etc. During the course of the preparation of that action for trial, she dismissed it without prejudice as to E. R. Wooldridge. When that action was finally submitted to the court on November 10, 1928, Mrs. Wooldridge was granted a divorce from her husband and was adjudged the sum of $2,500 alimony, $1,000 for the diamond rings, and $500 attorney's fee, the Gadberry conveyance was canceled, that property was sold, and, after the payment of prior liens, costs, etc., there was nothing left to apply upon her judgment.

On November 28, 1928, she began this action against her husband and E. R. Wooldridge seeking to have canceled as void the transfer to Wooldridge of the Jasper street property, and to cancel the transfer to him of the bank stock. On the hearing, her petition was dismissed.

### Can She Subject These to Alimony?

E. R. Wooldridge cites the case of Anderson v. Anderson, 194 Ky. 763, 240 S. W. 1061, as holding: "The law only authorizes the courts to declare void conveyances made in fraud of material rights to the extent that it deprives the wife of dower in real estate conveyed." We have examined this opinion very carefully and are unable to spell out of it support for E. R. Wooldridge's contention. In the Anderson case, the court had before

it a different question from the present one. The general principles of applicable law are thus stated in 1 R. C. L. 954, sec. 99:

"It is generally recognized that a decree for alimony in favor of the wife cannot be defeated by a fraudulent conveyance of his property on the part of the husband, for such an alienation could be set aside under the usual statutory provision declaring null and void all conveyances made with the intention of hindering and delaying creditors and others of their just and lawful demands. . . . A conveyance made on the eve of marriage may be declared null and void, if its fraudulent purpose is evident, especially since the relation about to be assumed requires the utmost good faith between the parties even before the actual ceremony. Such a conveyance, however, to be regarded in equity as a fraud upon the marital rights of the intended wife, and consequently not binding upon her, must be made without her consent or knowledge. . . . A plea that one is a bona fide purchaser, however, constitutes an affirmative defense, and, after the fraudulent character of the transfer is established, the burden of proving the plea is upon the defendant."

A similar statement of law will be found in 19 C. J. 318, sec. 734, and we have in this state both statutes and opinions amply sufficient to enable her to maintain this action. In addition to sections 1906 and 1907a, there is section 2126, Kentucky Statutes: "Sales and conveyances made to a purchaser with notice, . . . in fraud or hindrance of the right of wife or child to maintenance, shall be void as against them."

Decisions under that statute favorable to Mrs. Wooldridge may be found in Campbell v. Trosper, 108 Ky. 602, 57 S. W. 245, 22 Ky. Law Rep. 277; Ellison v. Davis, 159 Ky. 818, 169 S. W. 552. Decisions of this court sustaining her contention may be found in Zumbiel v. Zumbiel, 96 S. W. 542, 29 Ky. Law Rep. 791; Id., 83 S. W. 598, 26 Ky. La Rep. 1193; Id., 113 Ky. 841, 69 S. W. 708, 24 Ky. Law Rep. 590; also in Johnson v. Johnson, 2 S. W. 487, 8 Ky. Law Rep. 600; Muir v. Muir, 133 Ky. 125, 92 S. W. 314, 28 Ky. Law Rep. 1355, 4 L. R. A. (N. S.) 909. In those cases the fraudulent transfers had been made after the separation, but the same rule applies where the fraudulent transfer is made previous to

the separation. See May v. May, 109 S. W. 352, 33 Ky. Law Rep. 193.

### Were These Tranfers Fraudulent?

The deed by which it is claimed that the Jasper street property was conveyed to E. R. Wooldridge bears on its face the date April 12, 1927, and recites that the conveyance is made for a consideration of $3,000 in cash. The cerificate to the recording of this deed is:

"I, C. M. Langdon, Clerk Pulaski County Court, certify that the foregoing deed from J. T. Wooldridge to E. R. Wooldridge was April, 1927, produced to Geo. E. Gadberry, my deputy, and acknowledged by J. T. Wooldridge, as appears from the following indorsmeent thereon, to wit: '*1927 April 1927, duly acknowledged before me by J. T. Wooldridge, Att. C. M. Langdon, Clerk, by Geo. E. Gadberry, D. C.*' Same was August 10, 1927, filed for record. Wherefore I have recorded it and this certificate in my said office. Witness my hand this November 15, 1927."

Although this deed purports to have been made in April, 1927, yet it was shown by Lawrence Potter, a mail carrier who lives in Somerset, that he rented this property from J. T. Wooldridge and occupied it as a home in the year 1928 for four or five months; that he paid this rent to J. T. Wooldridge for a time, and after that, at the request of J. T. Wooldridge, deposited it in the bank to his credit. Previous to the occupation of this property by Mr. Potter, it had been occupied by a family named Girdler, and Mrs. Girdler says that she paid rent to J. T. Wooldridge until February, 1928, and that during that time, at her request, J. T. Wooldridge had the house painted and screened. Both Potter and Mrs. Girdler testified that they never heard of E. R. Wooldridge's ownership of the house, or had any dealings with him in connection with it.

To sustain his plea that he was a bona fide purchaser, E. R. Wooldridge testified in his own behalf. He testified he bought this property from J. T. Wooldridge on April 27, 1927, and paid him $3,000 in cash for it. He claimed to have bought the bank stock in 1927 and to have paid $1,000 in cash for that. On cross-examination it was shown that the only property E. R. Wooldridge had was

a farm for which he had paid $1,300, a horse which he listed at $50, and an automobile for which he had paid $400. He admits he did not own a cow or a hog, or any other personal property, except some notes, and he declined to say how many notes he had, or who were the obligors thereon. He was unable to say that he was in town when the transaction for the Jasper street property was closed. He did not know who prepared the deed. He did not know where he was that day; he did not know when he got it, except that he got it a few days after it was made. When he had it recorded he sent it to Gadberry to have it recorded. It is claimed that this deed was made April 27. It is known that J. T. and Eva Wooldridge were married on May 31; yet E. N. Wooldridge was unable to say whether he got this deed before or after these parties were married. He could not say whether this deed was acknowledged the day it was written or not. He could not say whether he was in town the day it was acknowledged or not. He could not say how long it was before the deed was made that he and his brother had talked the matter over. He could not say before whom the deed was acknowledged. He says this $3,000 was paid by his canceling notes he held against J. T. Wooldridge. He refused to say how many, or how much these notes amounted to, other than to say there were more than enough to cover the $3,000.00, and though he says they were more than enough, he admits he surrendered them to J. T. Wooldridge. He declined to answer whether or not he had listed these notes for taxation. He refused to answer how much money his brother owed him at the time these notes were executed. He says that when he made these alleged loans to his brother, that he paid him the sum loaned in cash. He was unable to say how long he had had this money in his possession. He said he got some of it from his brother-in-law, but did not know exactly how much. He admitted he had never been through his Jasper street property, but had only been on the porch and looked in. His testimony relative to the bank stock is equally unsatisfactory. He claimed he bought this bank stock from his brother at Gadberry's; that he paid him $1,000 for the 10 shares. He could not say when it was transferred to him on the records of the bank. He claimed he paid this $1,000 in cash. When asked where he got that cash, he delined to answer. When asked how he happened to

have so much money on his person, he said: "I won't answer that." He did not know where it was that he and his brother first talked over the sale of this bank stock. When asked if he had sold any property from which he had received that money, he said, "No." The cashier of the bank was introduced and by him, it was shown that this bank stock at the time it was transferred was worth about $120 per share. It was shown by him the transfer was made on July 28, 1927. It was further shown by him that the only money deposited to the credit of J. T. Wooldridge anywhere near that time was $1,200, the proceeds of a note he had executed to the bank on August 9, 1927, and $10 in cash, which he deposited one week after that.

Such testimony as this is not convincing. It does not look reasonable that a man with a $1,300 farm, a $400 automobile, a $50 horse, and no other property in the world, whose memory is no better than this man's would be gifted with such business acumen that he could amass the sums of money which he claims to have paid his brother and could succeed in wandering around with this money on his person until he had an opportunity to make this trade. The acknowledgment of this deed before Gadberry looks suspicious, for it was this same Gadberry to whom J. T. Wooldridge had transferred some of his property, which transfer was canceled in the first suit. There is room for suspicion; this deed was acknowledged at the same time the bank stock was transferred and that Gadberry dated the acknowledgment April 27 instead of July 27. The sale of this bank stock for $200 less than its value looks suspicious.

E. R. Wooldridge insists, however, that under the pleadings, this judgment must be affirmed. Here is the basis of that contention. When he answered, he first categorically denied the petition, and by a second paragraph he alleged that he was the owner of this Jasper street property by purchase from his brother, J. T. Wooldridge, and that he paid a valuable consideration therefor. There was no reply to that answer, and he insists that as the second paragraph of his answer is not controverted, in the pleadings, there was nothing the trial court could do but dismiss the petition; but unfortunately for him, the ink is hardly dry on one of our opinions wherein we disposed of a similar contention adversely to the idea which E. R. Wooldridge seems to have.

We refer to the case of Roberts, Johnson & Rand v. Baker, 224 Ky. 414, 6 S. W. (2d) 474, wherein we said:

"It is argued that appellee was entitled to a judgment on the pleadings, for the reason that she affirmatively alleged that the conveyance was bona fide, and for a good and valid consideration. She had denied the allegations of the petition, and her further allegation that the conveyance to her was for a valid consideration was only another way of adding to her denial. The fact that no reply was filed to it did not entitle her to a judgment on the pleadings, as no reply was necessary."

It is evident that the transactions between E. R. Wooldridge and J. T. Wooldridge by which E. R. Wooldridge claims to have acquired this Jasper street property and this bank stock were fraudulent.

The judgment is therefore reversed. The court will adjudge J. T. Wooldridge to be the owner of this property, and subject it to the claims of Mrs. Eva Wooldridge.