# Cloud et al. v. Middleton.

(Decided December 18, 1931.)

596

J. B. SNYDER for appellants.

G. G. RAWLINGS and SAMPSON & SAMPSON for appellee.

Opinion of the Court by Judge Thomas—Affirming.

On the 22nd day of February, 1927, there was a judgment rendered in the Harlan circuit court whereby Dora Madden was granted a divorce from her husband, George Madden, and was given alimony judgment against him for $1,000. Immediately thereafter, and on the same day, the appellant and one of the defendants below, James Cloud, paid to Mrs. Madden $250, which was part of a debt that he owed George Madden. The debt of which that sum was a part was the balance due the husband for the purchase of the tract of land, or one of the tracts, herein involved, and which was conveyed after the divorce proceedings stated and before judgment therein. The price agreed to be paid therefor by James Cloud to George Madden was $1,000, when all the proof in the case shows at that time it was well worth $2,000. Immediately following the payment of that $250 to Mrs. Madden in the manner indicated, three notes were executed by George Madden to his divorced wife for $250.00 each, and they were also signed by defendant, James Cloud, and by the appellee and plaintiff below, G. W. Middleton, and the former Mrs. Madden immediately transferred them to three separate transferees, and one of them was later

paid by the appellant James Cloud, a part if not all of which was also on the debt that he owed to the husband, George Madden.

Following that, and before the other notes became due, James Cloud conveyed the land to his wife, who was a defendant below and an appellant here, and then this equity action was brought by plaintiff, G. W. Middleton, under section 237 of the Civil Code of Practice to set aside that conveyance as fraudulent. An attachment was obtained, but it was not levied on any real property; but a corporation for which George Madden had labored was summoned as garnishee. Whether anything was realized from that source the record does not disclose. It was alleged in plaintiff's petition that the notes had been executed as stated, and that he signed them as surety for both George Madden and the defendant James Cloud, and, of course, that he was not a joint surety of Madden with Cloud. He then alleged the time when the notes would mature and described the real estate so alleged to have been fraudulently conveyed, and asked for a judgment fixing a lien upon the property for the amount that plaintiff would eventually be compelled to pay as such surety. Besides Mr. and Mrs. Cloud, the holders of the two transferred notes, and George Madden were also joined as defendants. No one answered but the Clouds, and they denied the material averments of the petition, and also averred that plaintiff and James Cloud were joint sureties, and that the latter had discharged his half of the obligation assumed by him as such and that he therefore owed plaintiff nothing.

Following pleadings made the issues and upon submission the court, on February 25, 1930, rendered judgment sustaining the prayer of the petition, and in it is this statement: "It is further adjudged that this case remain on the docket for the purpose of ascertaining in the future how much the plaintiff will be forced to pay out by reason of him signing the said notes and to ascertain the amount actually paid out and when that is ascertained a judgment shall be drawn conforming to the opinion of the court." From that judgment defendants prayed and were granted an appeal to this court. Some time in May thereafter Middleton gave notice to the defendants that he would on a day named move the court to modify or supplement the first judgment by incorporating therein the amount that he had paid by reason

of his suretyship, which at that time he had done, and on the hearing of that motion he filed his affidavit stating the amounts and dates of such payments, which aggregated, including some costs in suits on the notes, the sum of $661.64, and the court on May 13, 1930, pursuant to that motion and hearing thereon, modified or amended the prior judgment by incorporating that sum as the amount due plaintiff, and for which a lien had theretofore been given plaintiff on the described land in the petition. But neither the original nor supplemental judgment described the land upon which the lien was given (and which was that averred to have been fraudulently conveyed, although in the original judgment it was stated that plaintiff was entitled to a lien "against the property of the defendants, James and Mary Cloud, as set out and described in the original petition, for any sum or sums of money that he has paid out or may be forced to pay out in the future by reason of signing said notes." It is no doubt true that the judgment would have been sufficient without a specific description, since "that is certain which may be made certain," and the description of the land could easily be obtained by a reference to the petition in the cause. However, out of abundant caution plaintiff by counsel supplemented the two judgments four days after the second one was rendered (and on May 24, 1930), in which the land upon which plaintiff was adjudged a lien was specifically described.

An appeal was prayed and granted from the last two judgments, as was also done in the first one. This appeal by defendants, therefore, draws in question the propriety of those judgments. After the appeal was taken, but before submission, the appellant, James Cloud, died, and the appeal has been revived in the name of the proper parties, and the objection to the submission on that score is therefore eliminated. However, plaintiff's counsel objects to the appeal because at the time of the filing of the record in this court on June 7, 1930, it was accompanied by a motion for an appeal under the impression of appellant's counsel who prosecuted it that there was less than $500 involved, and the case should be brought to this court by motion for an appeal. The supersedeas bond was therefore executed in this court.

But we do not conclude that the practice as so pursued constitutes a ground for dismissing the appeal. If it be true that the clerk of this court had no authority

to take the supersedeas bond, it could have no effect upon the right of appeal, since, if no valid supersedeas bond was executed, plaintiff would not be precluded from enforcing his judgment as rendered. On the other hand, if the appeal granted by the court below was the proper one to prosecute, the answer is that it was done in accordance with the provisions of the Code, since the record was filed more than twenty days before the second term of this court after the rendition of the judgments. So that, if the motion for an appeal was redundant, it cannot affect the appeal granted by the court below, but only affects (if indeed it does so) the legality of the supersedeas bond; but, as stated, if that bond should be held to be invalid, it does not destroy the right of appellants to prosecute the appeal. Its only effect would be to not defer the right of plaintiff to enforce the judgment until the appeal was heard and determined. The motion to dismiss the appeal is therefore overruled.

On the merits of the case, we conclude, after a careful reading of the record, that the court's finding on both issues of fact, i. e., that plaintiff was surety for both Cloud and Madden, and that the conveyance (made subsequent to his becoming such) was fraudulent and done for the purpose of hindering plaintiff and other creditors of Cloud in the collection of their debts, was and is sustained by the evidence. We will not rehearse in detail that testimony, since it could be of no elucidating benefit to the profession, and but little, if any, gratification to the parties. However, we will notice one argument of counsel, and which is, that Cloud had no interest in the settlement of Mrs. Madden's judgment against her husband, and therefore no motive to assume any part of that judgment as sole surety for Madden; but we think the premise of that argument is not sustainable by the record. Cloud had bought a farm from Madden for half of its value. The record abundantly discloses that he knew that Mrs. Madden, after she recovered a judgment against her husband, would endeavor to subject the land that had been conveyed to him, and to attack the conveyance that her husband had executed, and which was done only by himself; Mrs. Madden not signing the deed to Cloud. The latter was also interested in eliminating any possible claim of Mrs. Madden, either as plaintiff in the judgment she held against her husband or because of the fact that she had not executed the deed

to Cloud with her husband. Those facts are abundantly established. Furthermore, when Middleton was approached to obtain his signature, Cloud and not Madden did the talking, and that conversation as detailed by the witnesses, including Middleton, clearly indicates that the two (Madden and Cloud) desired the signature of Middleton as surety for both of them.

On the issue as to the fraudulent conveyance, the proof is likewise sufficient to sustain the judgment. This being a conveyance between spouses, the law casts the burden upon the vendee to prove a valuable consideration and the bona fides of the transaction. Dotson v. People's Bank, 234 Ky. 138, 27 S. W. (2d) 673; Magic City Coal & Feed Co. v. Lewis, 164 Ky. 454, 175 S. W. 992; Allen v. Ligon, 175 Ky. 767, 194 S. W. 1050; and other cases referred to in those opinions. Mrs. Madden in an incoherent and unsatisfactory manner attempts to show that she inherited about 22 acres of mountain land from her father, which she sold to various parties, and with a part of the proceeds purchased the land in controversy, notwithstanding the fact that Cloud himself made the payments, but which he claims to have done as agent for his wife. Moreover, it is shown that a number of conveyances of land were made by Mrs. Cloud to other parties, the consideration of which aggregated an amount of money far in excess of the value of the land that she claimed to have so inherited, and the record as a whole forcibly impresses an impartial mind that this particular conveyance was made to avoid liability on the notes in controversy.

It is next insisted that the court erred in adjudging a lien upon the land, but that is exactly what section 1907a of our present statutes permits. That section as it appears in Carroll's 1930 Edition of Kentucky Statutes is a misprint, in that it is therein said: "That hereafter in this Commonwealth it shall be unlawful," etc., whereas in the act itself, which was one of March 16, 1896 (Acts 1896, c. 7), the word "lawful" is employed, and it so reads in prior editions of Carroll's Statutes to the 1930 one. So that the word "unlawful" appearing in the later edition is a misprint.

But it is insisted that, if all that we have said be true as to creditors whose obligations are due, it does not apply in the case of a surety seeking indemnity for

debts not due. In other words, that a plaintiff so situated may not attack a fraudulent conveyance under the statute. But that question was decided adversely to the contention of counsel in the two cases of Walters v. Akers, 101 S. W. 1179, 31 Ky. Law Rep. 259, and Samples v. Rogers, 107 S. W. 222, 32 Ky. Law Rep. 784.

Lastly, it is insisted for appellants that the practice employed whereby the amount of plaintiff's claim was fixed was unauthorized and erroneous. That might be available if objection had been made thereto. Notice of the motion to supplement the first judgment or modify it by inserting that amount, it having become fixed by plaintiff discharging his obligation, was duly given and made on the day specified therein. Upon that day plaintiff filed his affidavit showing the amount paid by him, and the record discloses no objection thereto, nor does it disclose any effort to postpone that hearing to enable the defendants to take testimony upon it. Of course, without some statutory provision, ex parte affidavits may not be read in the determination of an issue of fact, but the impropriety of such a course may be waived, and, when done, the one who waived it, cannot thereafter take advantage of it. Neither can the fact that no supplemental pleading was filed by plaintiff setting up the amount due him serve defendants on this appeal, for two reasons: (a) The failure to object to the employed procedure at the time it was taken; and (b) the provisions of section 444 under chapter 5 of the Civil Code of Practice dealing with "summary proceedings" expressly provides for the practice that was employed in this case.

Some argument is made in brief of appellants' counsel that the amount adjudged plaintiff was too large if he was entitled to any sum whatever, but that amount is not disputed by any affidavit or other response to plaintiff's affidavit in which he incorporated the amount. We have already found that the affidavit, because of defendant's waiver, took the place of a pleading, and it is nowhere denied.

Wherefore, upon the whole record, we find no error authorizing a reversal of the judgment, and it is affirmed.