## Gallagher et al. v. Ping's Trustees.

(Decided Nov. 1, 1935.)

H. C. KENNEDY for appellants.

B. J. BETHURUM and VIRGIL P. SMITH for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming in part and reversing in part.

In 1926, C. L. Ping negotiated for and purchased from Joe H. Gibson a residence lot in Somerset, Ky., but the deed was executed to him and his son Delbert C. Ping jointly; the latter being about 25 years of age at the time and had theretofore engaged in teaching school. A residence costing some $3,000 or more was erected on the lot, and it was then occupied as such by C. L. Ping and his family. Soon thereafter, and in the same year, the property was traded to Dudley Denton for about 50 acres of farming land near Somerset, with, perhaps, some slight differences in the valuation of the respective properties. But before C. L. Ping would agree to make the exchange, he required of Denton to procure one J. H. Hardwick to convey him about the same amount of adjoining land at practically the same valuation put upon the Denton tract. Denton looked after the preparation and execution of both his and Hardwick's deeds, and they were made to C. L. Ping alone, not recognizing his son, the appellant and defendant below, Delbert C. Ping, as a party to the transaction in any way. Following the execution of those deeds, and in the same year (1926), C. L. Ping and wife conveyed a one-half undivided interest in and to the small farm, composed of the combined parcels purchased from both Denton and Hardwick, to their son, the defendant Delbert C. Ping, and he moved onto the farm and seems to have operated it for the joint interest of himself and father continuously since then.

At the dates of such transactions, C. L. Ping was

a member of a partnership that was engaged in road contracting, but it does not appear anywhere in the record that either he individually or the members of his firm were indebted to any one in any amount at that time. The deed executed by C. L. Ping and wife in 1926, conveying a one-half undivided interest in the farm to their son, Delbert C. Ping, was not recorded until about the middle of the year 1931. Between the years 1926 and 1931, C. L. Ping incurred a considerable indebtedness, the greater portion of which originated in notes executed to two separate banks in Somerset and aggregating some $6,000 or more. On one of those notes, amounting to $4,000, Dudley Denton was surety, and he eventually paid it, thereby making C. L. Ping his debtor for that amount. The other note was for but $2,000, and it is still held by the bank to which it was executed.

After the first residence constructed by C. L. Ping, hereinbefore referred to, was conveyed to Denton, he (Ping) erected another one on a separate lot he owned in which he and his family thereafter resided; the son, Delbert C. Ping, having no claim in and to that property. In April, 1931, C. L. Ping and wife conveyed the latter residence to the appellant and defendant below, Sophronia A. Gallagher, a sister of C. L. Ping, and the wife of Dr. A. T. Gallagher, a physician residing in Louisville, Ky. The expressed consideration in that deed was $3,000, $1,800 of which was recited to be cash in hand paid, and the cancellation of two notes claimed to have been owed to the vendee by the vendor for money theretofore borrowed of her—the amounts as testified to being $700 borrowed by C. L. Ping from his sister in 1924; and $500 he borrowed from her in 1930. In the same month and near the same day, C. L. Ping and wife conveyed to their son, Delbert C. Ping, the other one-half undivided interest in and to both the Denton and Hardwick tracts (after their conveyance to their son in 1926 of the other half), and the consideration recited in that deed was "one dollar in hand paid and other good and valuable considerations" therein acknowledged, and the assumption by their son and vendee of the balance due on a mortgage which he and his father had put upon the land to secure the money with which to pay Hardwick at the time the purchase was made from him, the balance of which debt at that time amounted to $2,800.

During the same spring (of 1931), C. L. Ping also transferred to his son-in-law, a Mr. Sneed, an automobile for the alleged consideration of $600, a large portion of which was an alleged debt that Ping owed to his son-in-law. The deed to Mrs. Gallagher conveying to her the Ping residence in Somerset was executed and acknowledged by C. L. Ping and wife in Somerset and was carried by the latter to Louisville and delivered to Mrs. Gallagher. Accompanying it was a note signed by C. L. Ping to his sister, saying: "I am sending you deed for house by Rachel. You deliver any notes that I owe you to her and pay her the balance, eighteen hundred dollars." Upon delivery of the deed by Mrs. Ping, Mrs. Gallagher is alleged to have paid her $1,800 in cash, and for which she executed a receipt saying: "Received of Sophronia Gallagher $1,800.00 balance on house." In addition to the consideration expressed in the last deed that C. L. Ping and wife executed to their son, Delbert C. Ping, in 1931, the latter is alleged to have transferred and delivered to his father 15 head of cattle that had been reared on the farm that the son managed and chiefly operated, but which property was created and brought into existence through the joint operation of the farm.

After thus stripping himself of all of the property he had, both personal and real (by placing title thereto in his relatives), except perhaps some household goods and wearing apparel, C. L. Ping in October, 1931, after the expiration of more than four months from the time he made the 1931 conveyances and transfers referred to, filed his voluntary petition in bankruptcy, and plaintiff and appellee, W. O. Hays, became trustee of his bankrupt estate. He later filed this action in the Pulaski circuit court against C. L. Ping, his sister Sophronia A. Gallagher, Sneed, and the son, Delbert C. Ping, seeking to set aside all of the conveyances referred to by which C. L. Ping conveyed and transferred property to defendants, on the ground that they were fraudulent and were made and executed with the intent and design to hinder, delay, and defraud his creditors, and that the vendees and transferees had knowledge of and participated in such fraud, and plaintiff prayed to have the involved properties declared and adjudged to be a part of the estate of C. L. Ping for distribution among his creditors.

Defensive pleadings filed by each defendant put in

issue the material averments of the petition, and after the issues were developed considerable testimony was taken by the respective parties. Later the case was submitted to the court, and it adjudged all of the conveyances above recited as coming within the purview of section 1906 of our present statutes, and granted the prayer of the petition by setting them aside as having been fraudulently made for the purposes above referred to; but no judgment was rendered with reference to the transfer of the automobile, because in the meantime it had become destroyed in a collision with another one. Complaining of that judgment, appellants prosecute this appeal, vigorously urging through their counsel that the findings of fact by the chancellor are wholly without any testimony in the record to sustain them, and it is our task to determine whether or not that insistence is justified.

It will be noted that no law question is involved, since the only issue is exclusively one of fact. With reference to the attacked deed executed to defendant, Mrs. Gallagher, the bankrupt's sister, counsel says in his brief: "Counsel for appellee will not be able to put their finger on a line of testimony which indicates that the purchase of this house by Mrs. Gallagher was not a good faith proposition on her part." And with reference to the 1931 conveyance to the defendant, Delbert C. Ping, the son of the bankrupt, the same counsel says in his brief, "Nobody disputes or can successfully dispute that this consideration was really paid," referring, of course, to the alleged consideration recited in the 1931 deed executed by C. L. Ping and wife to their son conveying the husband's remaining one-half undivided interest in and to the farm, and which made the son the sole owner thereof; he having received a conveyance for the other half by the 1926 deed, supra, executed by the same parties. As a part of that consideration, which we have not mentioned, was the cancellation of an alleged note for $500 which the parties claimed that the father owed the son. It is because of and by accepting as literally true the testimony of father, son, and sister that counsel is led to make the statements that we have taken from his brief, and it is upon their testimony alone, as so expressly given, that he bases such statements.

But it should not be forgotten that the weight that

should be given to testimony is not to be measured exclusively by the cosmetics, garb, or dress with which it is decorated by the witness or witnesses who give it. Courts and other fact-finding agencies, in settling the rights of parties growing out of disputed facts, have the right to and do take into consideration the circumstances, as well as the reasonableness of the witness' account of what transpired as measured by the usual and ordinary rules of human conduct. When the story as told by the witnesses is not in accord, but out of harmony with the truth as reflected by the usual and ordinary methods of conducting the particular kind of transaction or transactions, the express testimony as given may become so weakened as to be practically destroyed; and that is more liable to occur when such transactions are between close relatives, and they are shown to be of sudden creation and rapid execution.

Mrs. Gallagher testified that she had accumulated quite a sum of cash by gifts from her husband, and from her daughter and son, both of the latter of whom received substantial compensation for jobs they held; that with the exception of a small spending account that she kept in bank the money so generously bestowed upon her by her husband and children was kept in her residence, and when Mrs. Ping delivered to her the deed that her brother and wife had executed to her she paid to the latter $1,800 in cash, which she then and there procured from her home safe or other depository. Likewise, she testified that she then and there delivered to Mrs. Ping the two notes which she claimed her husband owed her for borrowed money amounting to $1,200, which, with the $1,800 cash she paid in such unusual fashion, made up the consideration of $3,000. That story within itself is so extremely improbable as to cast an ineffaceable doubt upon her entire testimony, and it is rendered more so when it is remembered that it never occurred to Mrs. Gallagher to purchase the home of her brother, located some 200 miles from her place of residence, until the latter became utterly insolvent and was faced with financial wreck or ruin. Moreover, so far as this record shows, C. L. Ping continued to thereafter occupy the residence, and we nowhere find where he agreed to or did pay his sister any rent. The alleged notes that she held against her brother have vanished and their prior existence rests only in the memory of

the brother and sister as the only persons who ever saw them during their alleged earthly existence.

Directing our attention briefly to the facts surrounding the execution of the 1931 deed from the father to the son conveying the former the last one-half undivided interest in and to the farm, an inspection of the record justifies similar doubts and conclusions. The alleged $500 note as a part of that conveyance that it is claimed the father owed the son has likewise disappeared, and its memory also rests in the minds of the only two alleged parties to it. If it had only an imaginary existence, as we are inclined to believe is true, then the son paid no consideration at the time for the deed now under investigation. It is true he and his father say that the son assumed the payment of the balance of the mortgage on the farm, and also delivered to the father 15 head of cattle, the latter of which, as we have above pointed out, was property that the farm produced under their joint management, and it is not shown that the son has ever paid anything on the balance of the debt, or, if any, only an insignificant amount. That debt is yet owing and is a lien upon the farm, or upon the Hardwick part of it.

It must not be overlooked also that the sale to the son was suddenly thought of by the parties and immediately thereafter executed. After as much as four months intervened following the two 1931 conveyances which we have discussed, C. L. Ping sought repose under the welcome shelter of the bankrupt law; he believing and thinking that the elapse of such a period of time after making the conveyances constituted a bar against any attack that might be made by any one on or against either of them. In addition thereto, C. L. Ping procured a fire policy on the farm dwelling after his 1931 deed to his son had been executed, and he swore in his application for it that he was the sole owner of the farm, and the policy was issued to him alone as such sole owner. He made a financial statement to one of his creditor banks in which appears similar contradictions of the testimony he gave in this case. Those statements and other facts and circumstances are more than sufficient to establish his fraudulent purpose and design in making the attacked conveyances. But, under our repeated construction of the statute, supra, the fraudulent intent of the vendor or transferer of prop-

erty will not sustain an attack thereof by a creditor or one representing creditors, unless (a) the vendee or transferree has knowledge of such fraud and thereby participates in it, or (b) that there was no consideration for the conveyance or transfer. See section 1907 of our Statutes. In the latter case, (b), the transaction will be canceled, regardless of the intention of either party, provided always that appropriate proceedings are timely instituted for the purpose.

Additional comment on other portions of the testimony given by the immediate parties to the transactions would further fortify the trial court's conclusion that the two deeds executed by C. L. Ping and wife in 1931 (one to their son for one-half undivided interest in and to the farm, and the other to Mrs. Gallagher for the Somerset residence) were fraudulent within the provisions of section 1906, supra, of our statute, even conceding that the considerations testified to were actually paid, but which we conclude is extremely doubtful, and which conclusion with reference to the conveyance to Mrs. Gallagher is fortified by the further fact that the $1,800 in cash that she claims to have paid to Mrs. Ping, in the mysterious manner and through the unusual method that we have described, was never delivered to the husband by the wife; and so far as his testimony goes he never saw one cent of it, though financially pressed. He suffered his wife to retain the entire amount on a pretense that he owed her an amount (of ancient origin) that she had inherited from her father, and which he had spent in the early part of their married life, which claim was suddenly resurrected by the wife which was followed by domestic dispute between the two and culminated in his meekly submitting to her retention of the entire sum (?). We, therefore, conclude that the court properly canceled the 1931 deeds, one of which was executed to Mrs. Gallagher and the other to Delbert C. Ping.

But the judgment also canceled the deed executed in 1926 by C. L. Ping and wife to their son, Delbert C. Ping, conveying to him his first-acquired undivided one-half interest in and to the farm. There is nothing in the record to show that at that time C. L. Ping was indebted in any amount, or, if so, that he was in a condition to profit by a fraudulent disposition of his property. At the time of the filing of this action that con-

veyance was seven or eight years old and the son had been openly operating the farm as joint owner thereof with his father during that period. None of the earmarks of fraud that accompany the 1931 conveyances are found in the record in detraction of the bona fides of the 1926 conveyance. The consideration for that conveyance, as told by the witnesses, are not at variance with the way similar transactions are made between parties similarly circumstanced, as were the parties to that deed at the time it was made. Without further comment on the testimony, we conclude that the court erred in canceling the deed executed by the father and mother to their son of date September 10, 1926, by which he was conveyed a one-half undivided interest to the farm, and to that extent the judgment is erroneous.

Wherefore, for the reasons stated, the judgment is affirmed in part and reversed in part, with directions to modify it to the extent of the reversal we have ordered, and for other proceedings consistent with this opinion. The appellant will recover all of its costs against Mrs. Gallagher incident to the relief granted against her, but the costs on this appeal incident to the attack of the deeds executed to the son, Delbert C. Ping, will be equally divided between him and appellee.