## Trustees of First Nat. Bank of Stanford v. Saufley et al.

(Decided April 30, 1937.)

B. J. BETHURUM for appellant.

J. B. PAXTON and CHENAULT HUGUELY for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Affirming in part and reversing in part.

The appellant attacked under section 1907a, Ky. Stats., a certain deed as fraududent, and is now complaining because the trial court failed to award it the proper relief, and the appellees by cross-appeal are complaining because the court allowed it any relief.

### The Facts.

About the first of the year 1928, there was conveyed to H. R. Saufley and his wife, Annie E. Saufley, in equal shares, 177.388 acres of land in Lincoln county, for which they paid $27,000 in this way: They put in their home "in town" at $15,000, but what town is not stated, and assumed a mortgage to the Federal Land Bank for $12,000. This farm was probably not worth what they paid for it. On June 11, 1929, August 19, 1930, and February 2, 1932, H. R. Saufley made financial statements to the First National Bank of Stanford, Ky., in which he listed this farm at the value of $27,000. At the time of the first statement he owed this bank $2,000; at the second, $4,357; and at the third, $5,-709. In March, 1933, this bank was closed by President Roosevelt's bank holiday proclamation. It never reopened and the appellant trustees are liquidating its affairs. The Federal Land Bank debt has been considerably reduced by payments thereon.

On June 21, 1933, H. R. Saufley conveyed to his wife his interest in this farm in consideration, stated in the deed, of a note for $2,700 on C. Hays Foster and

her assumption of H. R. Saufley's half of the Federal Land Bank debt. That rendered H. R. Saufley insolvent.

On February 5, 1936, appellant trustees began this action by filing a petition in equity in which they sought to subject this land under section 1907a, Ky. Stats., to the payment of $5,414.46 and interest he owed the bank, when this deed was made. The court in its judgment found:

### The Trial Court's Finding.

"The Court is of the opinion that the said conveyance was a voluntary conveyance and that it is not supported by an adequate consideration, but declines to set aside said deed, to which plaintiffs object.

"The Court, being further advised, finds and adjudges that there are 177 3-10 acres comprising said farm and that the same at the time of the conveyance complained of was reasonably worth at a fair voluntary cash sale the sum of $75.00 per acre, or a total of $13,297.50; that the note executed to the defendant, Anna E. Saufley, by C. Hayes Foster, for $2,700.00 at the time of said conveyance was reasonably worth $1000.00; that the defendant, H. R. Saufley, at the time of said conveyance was the owner and possessor of a homestead in said farm worth $1000.00, and that the defendant, Anna E. Saufley, assumed and agreed to pay a mortgage indebtedness owned by the Federal Land Bank of Louisville, Kentucky, and which indebtedness at that time stood equally against both of the defendants, and that the said $1000.00, the value of C. Hayes Foster note for $2,700.00, the value of the defendant's, H. R. Saufley's homestead in said land so conveyed ($1000.00), and the $3,200.00 of the defendant, H. R. Saufley's part of the said mortgage indebtedness which was assumed by the defendant, Anna E. Saufley, or a total of $5,200.00, represented a payment by her as a part of the reasonable value of the one-half undivided interest of H. R. Saufley in the tract of land in question, which was conveyed by the said H. R. Saufley to Anna E. Saufley June 21, 1933, and which said $5,200.00, when deducted from the value

of the defendant's, H. R. Saufley's one-half interest in said land as found by the Court, or when deducted from $6,648.50, leaves a balance of $1,448.50 due the plaintiffs, for the payment of which out of the proceeds of the sale hereinabove ordered to be made it is ordered and adjudged the plaintiffs have a lien on the proceeds of the said sale, as herein ordered.''

The trial court ordered the one-half of this farm that Mr. Saufley had conveyed to his wife, Annie E. Saufley, sold to satisfy this $1,448.50. This satisfied no one, as is evidenced by this appeal by the trustees for the bank, and by the cross-appeal of the Saufleys, thus bringing the whole case before us for review, and we shall state and dispose of the questions presented.

## Was This Transaction Fraudulent?

It is admitted that on the day this deed was made and delivered (June 21, 1933), H. R. Saufley was indebted to the First National Bank of Stanford to the extent of $5,414.46, that being the sum of five notes he alone owed it with interest thereon to that date.

This deed made to his wife left H. R. Saufley without other real estate for the payment of this or other debts he may have had and, so far as this record shows, left him without any other property of any kind for the payment of his debts except this C. Hays Foster note of $2,700 and interest, and it is significant that this note was not used or attempted to be used in satisfaction of his debts although two years, seven months, and fourteen days passed before this suit was filed and Mrs. Annie E. Saufley had this note in her possession and filed it with her deposition taken two years, nine months, and fifteen days after this conveyance was made, and there is nothing on the copy of that note in this record to show she had ever assigned it to her husband.

We have two sections of our Statutes defining what conveyances are fraudulent. Section 1906 is founded on 13th Elizabeth and provides that practically anything a man does with the intent to delay, hinder, or defraud his creditors or other persons shall be void, as against such creditors, etc.

Section 1907 is founded on 27th Elizabeth, and provides that every disposition a man makes of his prop-

erty without valuable consideration shall be void as to all his existing liabilities, etc. A conveyance made by a debtor, even though it be for a valuable consideration may yet be held fraudulent if it would result in his creditors being delayed, hindered, or defrauded in the collection of their claims against the debtor, and the grantee was a party to the fraud. See Trimble v. McGuire, 12 Ky. Op. 136, 4 Ky. Law Rep. 986, where we said:

"The antecedent embarrassment and the immediate legal insolvency after the execution of the mortgage, coupled with the weight of the evidence that McGuire's property was not greater in value than the amount of his indebtedness, concludes the question of insolvency and the purpose with which the conveyance was executed."

See Farmers' Bank & Trust Co. v. Peters, 226 Ky. 403, 11 S. W. (2d) 103, 104, where we said:

"Section 1906, as consistently and frequently construed by us, does not limit the right of a creditor, in an action brought by him thereunder, to have the conveyance set aside and the property or its proceeds appropriated to his debt, only to cases where there was no valuable and adequate consideration for the attacked conveyance, since the relief will be given, notwithstanding such valuable consideration, if the other elements in the statute are proven, and which are, an intent on the part of the grantor 'to delay, hinder or defraud his creditors,' and the grantee had knowledge thereof."

See also section 249, p. 550 of 27 C. J.

There is no means by which we can for a certainty learn a man's intent by what he says, for he may say one thing and do another. Every man is presumed to intend the necessary consequences of what he deliberately does, and if what he so does necesarily delays, hinders, or defrauds his creditors, then the law presumes that was why he did it.

When a man is not in debt, he has absolute dominion over his property and may do with it as he may please. When he is in debt, he sustains a modified relation as to his property, that of owner and quasi trustee for his creditors. If they have taken no specific security from him as by mortgage or other lien, they

trust him upon the general credit of his property and a confidence he will deal honestly with them, will obey the law, and will not dispose of his property to their prejudice.

A debtor's creditors have therefore a right akin to an equitable interest in his property, and the law lays upon him an obligation to pay his debts, to be just before he is generous, to exercise good faith in all transactions relating to his property, and declares that dispositions of it, intended to delay, hinder, or defraud them, are void.

Mr. Saufley in his answer denies that he made this deed with any intent to delay, hinder, or defraud his creditors, but he did not testify, and when we consider what he did in the light of the effects it produced, we are sure the trial court did not err in holding it to have been fraudulently made by Mr. Saufley.

Was Annie Saufley a Party to This Fraud?

There is considerable argument in the briefs as to who has the burden of proof in a case such as this, and there is some confusion in our opinions as will appear from these cases.

In these cases, Treadway v. Turner, 10 S. W. 816, 10 Ky. Law Rep. 949, McKensie v. Salyer, 43 S. W. 450, 19 Ky. Law Rep. 1414, Rugless v. Robinson, 57 S. W. 619, 22 Ky. Law Rep. 437, Sikking v. Fromm, 112 Ky. 773, 66 S. W. 760, 23 Ky. Law Rep. 2138, and Wiggington v. Minter, 88 S. W. 1082, 28 Ky. Law Rep. 79, we followed the common-law rule, stated in section 718, p. 792 of 27 C. J., as the majority rule and held the burden was on the wife.

Then came Guthrie v. Hill, 138 Ky. 181, 127 S. W. 767, and Aultman & Taylor Machinery Co. v. Walker, 138 Ky. 835, 124 S. W. 329, rehearing denied, 138 Ky. 835, 129 S. W. 303, wherein we placed the burden on the creditor; then in Oldham's Adm'x v. Oldham's Adm'x, 141 Ky. 526, 133 S. W. 232, we held the burden to be on the wife; in Cogar v. National Bank of Lancaster, 151 Ky. 470, 152 S. W. 278, and Blackwell v. O'Neal, 152 Ky. 563, 153 S. W. 721, we held it to be on the creditor; in Stix v. Calender, 155 Ky. 806, 160 S. W. 514, we held it was on the wife; in Mount v. Fourth Street Bank, 156 Ky. 503, 161 S. W. 220, we held it to be on the creditor; in Perry v. H. Krish & Co., 157 Ky.

109, 162 S. W. 555, and National Roofing Materials Co. v. Smith, 165 Ky. 848, 178 S. W. 1125, it was held to be on the wife; in Owens v. Childress, 189 Ky. 676, 225 S. W. 487, Hazel v. Dougherty, 207 Ky. 89, 268 S. W. 823, and Siddens v. Ennis, 217 Ky. 810, 290 S. W. 669, it was put on the creditor; and in Stewart v. Wheeler, 220 Ky. 687, 295 S. W. 991, Francis v. Vastine, 229 Ky. 431, 17 S. W. (2d) 419, Cloud v. Middleton, 241 Ky. 595, 44 S. W. (2d) 559, Thrasher v. Craft, 242 Ky. 101, 45 S. W. (2d) 827, Farmers' Bank v. Hagan, 242 Ky. 535, 46 S. W. (2d) 1084, and Burnett's Adm'x v. Farmers' Nat. Bank, 243 Ky. 760, 49 S. W. (2d) 1033, it was placed on the wife. These may not be all the cases where we have ruled on this question, but we have found these in the hurried examination we have made.

We may some day have to straighten out this question of the burden of proof, but it is not necessary for us to do that now, for even if we were to say the burden was on the creditor, we would still have to say the burden was sustained in this case and that Mrs. Saufley knew this whole situation as well as her husband did and was a party to his intent, which evidently was the conclusion of the trial court.

Mrs. Saufley testifies she did not know her husband was in debt until he proposed to convey her his interest in this farm for the $2,700 note against C. Hays Foster in order to enable him to settle up with the bank. She testifies she asked him how much he owed the bank and that he answered $3,000. We are persuaded she knew more, for Mr. John B. Foster, the president of this bank, testifies that before this deed was made Mrs. Saufley would customarily ask him about the indebtedness of the Saufley family to the bank, all of whom were its customers, and he would turn to the liability ledger and tell her. Mrs. Saufley testifies this did not occur. In the brief filed in her behalf, the statement is made that Mrs. Saufley did not know her husband owed the bank more than $3,000 until this suit was filed and she so testified, but she also testified she learned he owed the bank $3,000 at the time she, at the request of the bank, became H. R. Saufley's surety on a $500 note given to the bank by him March 1, 1933. That should have put her on inquiry and probably did, and she may have learned from Mr. John B.

Foster the extent of her husband's debts just as he testified she did. This appears in her testimony:

"Q. Did you ever question John B. Foster about Mr. H. R. Saufley's indebtedness to the bank? A. No, sir, I didn't. When Rowan told me he owed this $3000.00 I told Mr. John B. Foster I didn't know he owed that much."

This is an admission she had a conversation with John B Foster and is very persuasive the statement made by him that he told her the extent of her husband's indebtedness is true.

The expressed consideration in the deed in question is:

"That for and in consideration of the $2700.00 note made by C. Hays Foster to the party of the second part which she has this day transferred and endorsed to the party of the first part, the receipt of which is hereby acknowledged, and for the further consideration of the party of the second part assuming the payment of the mortgage on the property hereinafter described held by the Federal Land Bank of Louisville, the party of the first part does hereby sell and convey, etc."

Mrs. Saufley now testifies the consideration was: "Well, he came home and told me that he needed the money to meet his obligations, and that if I would not call on him for money I had loaned him and would turn over this note of Mr. C. Hays Foster's and assume the loan, he would deed me his half of the farm."

She now testifies her husband owed her $1,720 and had owed it eight or ten months, and as evidence of that she files a note for $500 that was due June 14, 1910, and nine checks running from 1916 to 1931, but nowhere does she say these have not been repaid. If Mrs. Saufley had sued, say, for the $50 loan she says was made by her check of April 14, 1916, her action would not have been upon the check, but upon her husband's implied promise to repay her the sum loaned him if it was a loan, and all the check would have been is, it would be evidence she paid her husband $50 at that time. The claim for this $50 would be barred April 14, 1921, for the action is not on the check. Thus all of her claims,

on all these matters were barred by limitations except the two checks aggregating $105 given in 1931.

Whether barred or not, is not of any great importance here, but the omission from the consideration stated in this deed of the fact that Mrs. Saufley had canceled her husband's indebtedness to her is important, for had that been inserted it would have tended to lend a color of fraud to this deed, that Mr. and Mrs. Saufley were endeavoring to avoid.

This C. Hays Foster note. has not been paid. Mr. Foster sustained a heavy financial loss in the stock market crash of 1929. He sustained a paralytic stroke in 1931 and is now in bankruptcy. No dividend has ever been paid by his bankrupt estate and what it will ultimately pay, if anything, is so highly problematical that we feel the trial court was too liberal when he put its value at $1,000, but that is of no concern except as it tends to connect Mrs. Saufley with her husband's fraud.

When we sum up all the foregoing, the fact that Mrs. Saufley got her husband's half of this farm for practically nothing, had this C. Hays Foster note still in her possesion unassigned to her husband in 1936, and view all this with that scrutiny the law gives to transactions between husband and wife, we are compelled to say she was not a good-faith purchaser for a valuable consideration but knew her husband's financial condition and was a party to his fraud.

### The Remedy.

If this were a good-faith purchase for a valuable consideration, the proper remedy would have been to dismiss the petition; but if Mrs. Saufley was a party to the fraud, as the trial court found and as we find, the trial court should have held the transaction void and leave Mr. and Mrs. Saufley just where they put themselves by their fraud, that is leave them to settle as between themselves his indebtednssss to her and the ownership of this C. Hays Foster note.

What must be done is to treat this transaction as void, to hold that H. R. Saufley still owns one-half of this farm, and to adjudge the plaintiff bank has a lien thereon for its $5,414.46 with interest from June 21, 1933, and to have this property sold in satisfaction of it.

Mrs. Saufley is entitled to her half of this farm and to her husband's homestead ($1,000) in her husband's half, and to one-half of what she must pay to the Federal Land Bank, but that is all.

On the whole the trial court reached the correct conclusion but applied the wrong remedy. Therefore the judgment is affirmed on the cross-appeal and reversed on the direct appeal.