## Pope v. Cawood.

March 23, 1943.

George R. Pope and Chas. B. Spicer for appellant.

J. B. Carter and H. C. Clay for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

This appeal is an aftermath of Cawood v. Cawood's Adm'x, 285 Ky. 201, 147 S. W. (2d) 88, and related to Pope v. Cawood, 293 Ky. 389, 168 S. W. (2d) 985. For purposes here it is sufficient to say that in 1924 J. F. Cawood qualified as administrator of the estate of his brother. In 1927 it appeared that there was insufficient surety, and the county court required additional bond. Later he was relieved of his duties,

and one of the heirs qualified. W. M. Pope was surety on the original bond.

Conceiving that there had been mismanagement and default, the estate by successor, sought recovery and on October 6, 1938, obtained judgment against sureties for $41,000, all paid by appellee to whom the judgment was assigned. That judgment was affirmed in December, 1941, and about that time appellee sued H. H. and W. M. Pope, seeking from each contribution of one-third of the judgment. In his petition appellee set out the above facts and alleged that on February 27, 1941, execution against his co-sureties was returned, "No property found."

Appellant, the mother of W. M. Pope, was made defendant, it being charged that the son had on March 1, 1936, executed to her a mortgage on two parcels of land to secure an alleged indebtedness of $10,000, and that knowing of his liability by reason of his suretyship, he had executed the mortgage for the purpose of preventing appellee from recovering contribution, and that it was made without consideration.

It was alleged that two of the co-sureties were totally insolvent, and that W. M. Pope was disposing of his properties with fraudulent intentions. Grounds were sufficiently laid for the purpose of securing general attachment, covering the property of the two. The effect of the attachment is discussed later.

Appellant denied all allegations and plead that her lien was created fairly for an alleged debt of more than $23,000. Proof was taken by deposition, and upon submission the court gave judgment for one-third of the original judgment; held the mortgage void; sustained the attachment, and directed sale, the proceeds of the two tracts under mortgage to be applied first to the bank's and then to appellee's claim. The bank's priority was admitted by all parties.

The chief question discussed in briefs relates to the good or bad faith in the execution of the mortgage. However, at the outset it is insisted that appellant was entitled to judgment because the allegations of her answer were not denied, a matter not raised in the lower court, insofar as the record discloses. However this may be, the ground is not well taken, since the allegations of the petition and the denial by answer completed issue. Rob-

erts, Johnson & Rand v. Baker, 224 Ky. 414, 6 S. W. (2d) 474; Wooldridge v. Wooldridge, 229 Ky. 406, 17 S. W. (2d) 220.

W. M. Pope's deposition was taken as if on cross. Much of it was of discovery nature. On the main point he testified that he had begun borrowing money from his mother twenty years ago; he had given her a note for $18,000, but could not remember when, "but way back when she was selling rights of way; I would always get her money—borrow it from her—I don't remember the date, but it has been a long time ago. I owe her $20,000 now, and will never be able to pay it." Asked, "What did she give you for the $18,000 note?" he replied, "I just gave her my note you know." As to the particular mortgage: "She said ten thousand dollars, the property was not worth more than that, and *she* would give me a mortgage for that, and I had been drinking around and *she* said she would give me a mortgage; 'what you have got you are going to run through with,' and I said, 'well I will do that.' She said 'you owe me $20,000,' was the way she put it, and I said 'I will give you the mortgage if you want it,' and she said, 'Well, $10,000 is enough to cover it and more; give me the mortgage for $10,000,' and I did." He testified that he did not know whether or not he was the owner of the tract on Bob's Creek (embraced in the mortgage) or not. 'I don't believe I ever owned it; we traded around up there a lot, and I just don't know how we traded about that."

On her behalf appellant testified that her son had never engaged in any business enterprise; that he was of dissolute habits. She had spent a great deal of money on him, some to break him away from drink. She said that she had inherited some property from her father, and had bought the son's interest in the father's estate. The son, when able, attended to her affairs. She had furnished him money to buy a tract of 110 acres, and another small tract, the deeds taken to the son. She said: "He was drinking up everything and I made him give me the mortgage; he owed me over $20,000. I have notes for that." Appellant exhibited three demand notes, executed by the son. One for $18,000, executed March 1, 1923; the second October 24, 1925, for $645, and another October, 1929, for $5,000. As to the first note appellant said, "He was drinking up everything

and I made him make me notes for the money I let him have," and likewise in respect of the second note. She explained that she got the money which the son borrowed from sales of rights of way, royalties from coal operations and sales of timber.

On cross-examination appellant could not tell how much money she had let her son have; she had paid out much to doctors; "when I sent him to Nashville it cost me $100." She said she had not let him have any money when he executed the $10,000 note; that she took the mortgage for $10,000 because she thought that was all the land was worth. She had not loaned him any money recently, except $15.

W. M. Pope, in direct testimony, added very little, if any, to his original recitals; nothing that would be of benefit to his mother's claim. He said that he had gotten most of the money from his mother in 1918 and 1923 to buy two tracts of land. He does not say that this or the other sum was expected by him or his mother to be repaid, and ended by saying that the mortgage was given to secure payment of the money he had gotten from his mother "from time to time." Mrs. Pope's testimony is far from convincing us of the idea that she was doing more than making advancements to her only child. She says she never kept account of it.

It is argued here that the pleadings alleged only constructive fraud and that the proof is conclusive that such was the character of the fraud, if any; that in this state of case the son had the right to convey to the mother to the extent of securing restitution of the amount of the actual consideration paid, relying upon J. B. Colt Company v. Brown, 242 Ky. 523, 46 S. W. (2d) 1074. This case, as well as those cited in opinion, are only applicable here insofar as they state the rule (which is admitted by appellee) with relation to the effect of constructive or legal fraud as distinguished from actual fraud. The distinction lies in the fact of knowledge or lack of knowledge on the part of the grantee, of an effort on the part of the grantor to put his property beyond the reach of a creditor.

The judgment here may be upheld under either theory, but we have concluded that there existed actual fraud within the meaning of that term. The general well known rule is to the effect that where fraud is alleged, the plaintiff must develop the fraud by clear and

convincing proof. But there are also well established exceptions. In cases where the questioned transactions are between persons closely related, such are always closely scrutinized. We have, in a majority of cases, held that where there is a charge of fraudulent conveyance between relatives, the burden is on the grantee to show bona fides. This matter is so thoroughly discussed in Trustees of First Nat. Bank of Stanford v. Saufley, 268 Ky. 732, 105 S. W. (2d) 605, that reference to the opinion is all that is necessary.

There are also well known "badges of fraud," which when existing throw the burden of proof on the grantee to show the good faith of the transaction. Fraud may be shown by circumstances of such character as to create inferences requiring peremptory demand for explanation. Com. v. Filiatreau, 161 Ky. 434, 170 S. W. 1182. A transfer made by a debtor, after a suit has been begun against him, is a badge of fraud, Allen v. Ligon, 175 Ky. 767, 194 S. W. 1050, citing cases, as is a transfer of all or an appreciable part of a debtor's property when insolvent or financially embarrassed; Allen case, supra. The knowledge of the fraudulent intent is the point on which the question must turn. Allen case and numerous citations, and Jones v. Jones, 254 Ky. 475, 71 S. W. (2d) 999.

There can be little or no doubt that Mrs. Pope, both before and at the time of the conveyance, knew that her son was insolvent; that he was embarrassed financially, and that he was transferring to her all, or nearly all, of the property which he owned. It had never occurred to her to secure payment of any one or all of the three notes until after the son had bound himself as surety on the Cawood bond, a fact of which she admitted knowledge. She had heard of the fact that one of the original sureties on the original bond had "gone broke." She says she never intended to take a mortgage until the son went to drinking, and as the son says it was given because his mother said, "What you have got you are going to run through with." She does not say that she did not know of the pending suit against the son, but that the son had not told her of the fact, and did not "name" to her that the mortgage was for the purpose of evading liability on the bond.

The litigation, out of which grew the judgment against the sureties, was begun in January, 1929. Prior

to that time the court had ordered additional surety. The opinion in the Cawood case, supra, shows the various and numerous efforts made for settlement and steps taken to fasten liability on the sureties. However, without indulging the assumption that she knew of the situation, and giving the stamp of verity to the mother's testimony, we are convinced that being under the burden imposed by the badges of fraud, and the existing relationship, creating the strong inference of fraud, it was the duty of appellant to produce satisfactory evidence of the bona fides. Because of failure to produce satisfactory proof of the claimed good faith of the transaction, or that the transaction was based on a genuine consideration, though the matter of consideration would be of no importance where actual fraud exists (McDonough v. McGowan, 165 Ky. 425, 177 S. W. 277, and cases cited on this point) we are constrained to agree with the chancellor that the transfer did not vest title in appellant.

In addition to cases cited above, see Magic City Coal Company v. Lewis, 164 Ky. 454, 175 S. W. 992, and as to the measure or weight which may be given testimony in this class of cases, see Gallagher v. Ping's Trustees, 261 Ky. 122, 87 S. W. (2d) 130; Cloud v. Middleton, 241 Ky. 595, 44 S. W. (2d) 559, and McCormack v. Moore, 273 Ky. 724, 117 S. W. (2d) 952.

Appellant urges other grounds for reversal, but they are not of materiality. It is contended that the court ordered the sale of four tracts of land when title to only two were in issue. We do not so construe the judgment. Appellee in his original petition sought only to proceed as to tracts Nos. 1 and 2, admitting the superiority of the bank's lien. In answer appellant alleged her lien on the two tracts by reason of the son's mortgage. The other two tracts got into the record by way of appellee's amended petition, wherein it was alleged that in order to secure the bank's debt, W. M. Pope and his mother had mortgaged four tracts to secure the loan of $3,500, his mother being his surety, and he called on the bank to proceed against them in order to establish its primary lien.

The judgment did describe tracts Nos. 3 and 4 (not involved here), but recites:

"The mortgage to the Bank of Harlan, above mentioned, embraces two other tracts of land. * * * and

it is adjudged that if the bank hereafter enforces its mortgage (which it did not in this case undertake to do) on said lands described in its mortgage, that it shall first have sold tracts 3 and 4, and credit its debt with the amount of said sale.''

However, the commissioner was only directed to sell tracts 1 and 2. This confusion, if it were such, does not justify a disturbance of the judgment.

Appellant, admitting the sufficiency of the petition in stating grounds of attachment, and that "the record may be sufficient to authorize the court to sustain the attachment," says the court was in error in sustaining because of insufficiency of service and return. The attachment simply bore the following endorsement: "Executed the within attachment on Lavina and W. M. Pope by delivering each a true copy." Conceding that the return did not comply with Section 217 of the Civil Code of Practice (Boone v. Evans, 235 Ky. 487, 31 S. W. (2d) 723) and did not create a lien on any property, this does not affect the judgment.

Section 1907a, Ky. Stats., KRS 378.030, provides that a lien is created without further action, by the filing of a petition charging that real property has been fraudulently conveyed. We have construed this section in Rice v. Kelly, 226 Ky. 347, 10 S. W. (2d) 1112; Taylor v. Rapp Lumber Co., 248 Ky. 560, 59 S. W. (2d) 5, and recently in Citizens Bank & Trust Co. v. McEuen, 281 Ky. 113, 134 S. W. (2d) 1012.

There is some argument to the effect that limitation would and did bar the suit of appellee. This is based on the theory that it was maintained under Section 1910 Ky. Stats., KRS 378.060 and Section 1911 Ky. Stats., KRS 378.070, which deal with conveyances fraudulently made for preference of creditors. The latter section, supra, provides that all transfers referred to in the former section "declared to inure to the benefit of creditors generally shall be subject to the control of courts of equity, upon the petition of any person interested, filed within six months after the * * * transfer is legally loged for record, or the delivery of the property or effects transferred."

A reference to notes under sections 1906 and 1907, Ky. Stats., under which the instant action was commenced and prosecuted, will at once demonstrate that

the six months' limitation does not apply, but that it is controlled by other sections relating to limitations. Aside from this we have examined the record and find no plea of limitations, or demurrer by appellant to the petition.

On the whole case we cannot escape the conclusion that the transfer attacked here lacked the bona fides necessary to be shown on the part of grantor to uphold her claim. Judgment affirmed.