## National Bank of Kentucky's Receiver v. Brashear et al.

(Decided Oct. 19, 1937.)

G. C. WILSON for appellant.

T. E. MOORE, Jr., for appellees.

OPINION OF THE COURT BY JUDGE BAIRD—Reversing.

During the year 1928, the defendant J. P. Brashear was a stockholder and director in the Perry Bank & Trust Company, doing business at Hazard, Ky. This bank was a merger of two other banks that had done business at Hazard, Ky., prior to its reorganization. One of the banks that was merged into the Perry Bank & Trust Company was known as the Perry County State Bank. Before the merger the defendant J. P. Brashear was a stockholder and director in the Perry County State Bank. This bank borrowed from the National Bank of Kentucky, prior to the merger, the sum of $24,500, which note was signed by J. P. Brashear and other directors of that bank as sureties. The original note was executed on April 3, 1928. It was renewed a number of times before the Perry County State Bank merged with the Perry Bank & Trust Company. It seems that the National Bank of Kentucky went into liquidation. The receiver for that bank, A. M. Anderson, brought suit on this note in the Jefferson circuit court against J. P. Brashear and all the sureties on the note, and procured a judgment by default against this defendant. No part of the judgment was ever paid

except as alleged in the plaintiff's petition, $375, paid on January 5, 1929; $960, on November 26, 1930; $2,800, in June, 1932; $687.20, on January 17, 1933; and $1,000, on May 22, 1933. On this judgment an execution was issued directed to Jefferson county and also one directed to Perry county. A return was made on the execution: "No property Found."

On the 4th day of September, 1934, A. M. Anderson, receiver of the National Bank of Kentucky, instituted this action against Sallie Brashear and J. P. Brashear, alleging in his petition that J. P. Brashear, since the execution of the note referred to, and after his indebtedness to the National Bank of Kentucky, fraudulently and with the intent to cheat, hinder, and delay his creditors, especially the National Bank of Kentucky, conveyed to Sallie Brashear, his wife, all of the real estate owned by him; that, by doing so, he rendered himself insolvent and immune from the ordinary processes of law because he had no other property subject to execution except his real estate, and asked in his petition that said deed be declared fraudulent and void, and that the several tracts of land set out and described therein be subjected to the payment of its debt or the balance of its judgment, and costs expended. The defendant traversed the petition and further alleged that at the time the deed of conveyance was made to her by her husband, J. P. Brashear, it was long before the note sued on had been executed by J. P. Brashear to the bank; that the note sued on was dated the 5th day of May, 1929, and that the deed to her was executed for a good and valuable consideration prior to that date; to wit, on the 1st day of August, 1928; that she had been the owner from that date to the bringing of this action; that the plaintiff knew, or could have known, by reasonable diligence, that the conveyance of the property had been made and delivered to her, and that she in said time was in the open, adverse, and notorious possession of the property ever since. She filed the deed with her answer. A reply was filed traversing the affirmative allegations of the answer.

After the pleadings had been fully made up, the issue presented by the record was one of fact. Was the deed that is attacked by the plaintiff fraudulent and made for the purpose of hindering and delaying the plaintiff in collecting its debt? Evidence was taken upon that question and the trial court adjudged the deed

not to be fraudulent and dismissed the petition. From that judgment, the plaintiff appeals.

The evidence is to the effect, in fact, admitted that the note signed by J. P. Brashear, on which the judgment in the Jefferson circuit court was rendered, was originally executed on the 3d day of April, 1928. At that time, J. P. Brashear was the owner of the tracts of land set out and described in the deed in controversy. On the 1st day of August, 1928, with this indebtedness against him, he made and executed the deed in question to his wife. If, under the facts of the case, this was done for the purpose of defrauding, cheating, hindering, and delaying the collection of that note, and the defendant Sallie Brashear had knowledge of his purpose, then the deed should be set aside and held for naught, so far as it affects the rights of this plaintiff.

It must not be overlooked that this conveyance is between man and wife. We said in the case of Cloud et al. v. Middleton, 241 Ky. 595, 44 S. W. (2d) 559, 561:

"This being a conveyance between spouses, the law casts the burden upon the vendee to prove a valuable consideration and the bona fides of the transaction."

A summary of the facts in this case is as follows: The deposition of Sallie Brashear was taken as on cross-examination by the plaintiff. She stated that her husband, J. P. Brashear, was related to L. F. Brashear, who was formerly president and manager of the Perry County State Bank; that they were second or third cousins; that she remembered the occasion of the Perry County State Bank closing its doors; that at that time she and her husband had some money in that bank—$800 or $900—and also her husband owned stock in that bank amounting to $1,200, all of which was lost. However, she stated that she did not know that he had signed this note to the National Bank of Kentucky. She admitted that the consideration stated in the deed was $1 and no more, and that she wrote the deed herself. She did not remember the day of the week or the time of day or the month. She admitted that she did not pay him anything on that day for the property, but stated that, in the year 1907, she, after her father died, obtained about $300 for her interest in her father's estate; that she let her husband, J. P. Brashear, have $200 of that money; that, when the deed was made, this was a method to pay

her the $200 he had received in 1907. She did not pay her husband anything when the deed was executed. For the remainder of the consideration, she was to take care of him during the time he was sick; that she did not agree to pay him any certain number of dollars for the land; that he was sick at the time and so was she; that her husband discussed with her about making the proposed transfer of the land before it was made, but she did not remember when he decided to make her the deed. She stated that he had lost his health and wanted her to take care of him. She also stated that the Perry County State Bank closed its doors in 1928, and that this land was all the land that J. P. Brashear had. He had nothing left except a small amount of personal property worth very little. She also stated that the deed was made on August 1, 1928, but was kept and pocketed by her and unrecorded until January 24, 1930. She was unable to give any other reason for not recording it except that it was done by oversight or negligence on her part.

J. P. Brashear, her husband, in his deposition, stated that she paid him $200 at the time she made the deed; that she had $200 and she paid it to him, and agreed later to pay him $1,000 more, but executed to him no note or gave him anything as evidence that she owed him, only gave her word. He admitted that the original note was executed prior to the execution of the deed. He admitted he was sick at the time, as was also his wife. He admitted that he was insolvent after the deed was made and is still insolvent. He stated that the tracts of land aggregated about 400 acres and that an average of from $5 to $10 an acre would be a fair price for the land.

The defendant Sallie Brashear does not anywhere state in her testimony that she was under any obligation to pay her husband for the land except that she had agreed to care for him when he was sick, and possibly the husband stated that she agreed to pay his doctors' bills. There is sharp contradiction between them as to the consideration and when it was paid and how paid. We do not think that explanation is sufficient. It should be a pleasure as well as a duty for a wife to look after and care for her husband when he is sick. The consideration for the land, as set out by the witnesses, strikes the court as being insufficient to overcome the burden that is shifted to them, when it is shown that the

husband was insolvent and owed a large sum of money and then deeded all of his land to his wife, as we think, for no other purpose than to defeat the payment of his debt, especially when the bank of J. P. Brashear had gone into liquidation, and that he and his wife had lost the money they had in the bank. It is unreasonable for his wife, who lived with him, not to know that he was heavily in debt, and especially that he had signed this note. And the further fact that she knew that he was deeding her everything he had and getting nothing from her for it. The execution of the deed, under the circumstances, resulted in nothing less than J. P. Brashear and his wife making an effort at the expense of their creditors to transfer his property and place it in a situation, as they thought that it could not be subjected to the payment of the plaintiff's debt. From the whole of the record, relationship of man and wife existing, we believe that it constitutes a badge of fraud, which, under the law, shifts the burden to the defendant Sallie Brashear to explain fully the genuineness of the transaction and that the transaction was in good faith. The court will always, in situations like this, look with suspicion upon family dealings. It occurs to us that the consideration for the land was inadequate; that it was fictitious; that it was made on account of the great indebtedness of the husband; that it was a combined effort of each of them to put the title of his land in the wife's name, where it could not be subjected to the plaintiff's debt.

We do not believe that the transaction between the defendants was in good faith and for that reason, with others herein stated, it is our judgment that the deed was fraudulent.

Wherefore, the judgment is reversed, with directions that the deed be set aside, the land sold, and a sufficiency of the proceeds be applied to the payment of plaintiff's debt, interest, and costs, and for such other proceedings consistent with this opinion.