## Myers Dry Goods Co. et al. v. Webb et al.

June 2, 1944.

A. D. Hall and J. D. White for appellants.

D. G. Colson and Roy W. House for appellees.

OPINION OF THE COURT BY PERRY, COMMISSIONER— Affirming.

On October 24, 1938, the appellees, Walter Webb and Dora Webb, his wife, bought a certain farm situated near Hensley, Clay county, Ky., to which a joint deed was executed them in the names of Dora Webb and Dora Webb as committee for Walter Webb, which was thereupon duly put to record.

Thereafter, on March 16, 1940, Webb and his wife, Dora, executed a deed, jointly conveying Webb's half interest in the property to their three infant children, Harold, Zola and Urshley Jane Webb (all infants under ten years of age) and "any other child born to the parties of the first part" for the consideration recited in the deed of the love and affection grantors had for their children and "in order to provide a home for them and to insure their maintenance and education by means of income derived from the land hereby conveyed them," the grantors reserving in the deed the right to control said land during the minority of the youngest grantee and further providing that grantees should not have the right to sell, rent or lease the land conveyed during the life of the grantors without their consent in writing. On the day this deed was executed, conveying Webb's half interest in the property to their three infant children, it was duly put to record.

Some two or three months following the execution and recording of this instrument of conveyance, a number of merchant creditors of the appellee, Walter Webb, a country merchant, instituted in the Clay circuit court their several suits in equity, under the provisions of sections 1906 and 1907, Kentucky Statutes (KRS 378.010 and 378.020 respectively), against their debtor, Walter Webb, his wife, Dora, and their grantees, the above-named three infant children, for the purpose of recovering judgments upon their respective claims; to enforce the satisfaction thereof, by setting aside the conveyance of March 16, 1940, made by Webb and his wife, on the ground that it was fraudulent and have the property subjected to the payment of their claims.

These suits, being all similar in their pleadings and facts, were ordered consolidated and to be tried as one in the name and style of the plaintiff, Myers Dry Goods Co. v. Walter Webb et al.

A joint answer was filed, denying the allegations of the petitions, thus making up the issues.

Upon trial of these consolidated actions, the chancellor refused to set aside the assailed conveyance and adjudged that the petitions be dismissed except as to Walter Webb, the defendant, against whom plaintiffs were given a default money judgment upon their claims, he alone of the defendants having failed to interpose any defense to the petitions.

Seven of the eleven plaintiffs in these consolidated suits, complaining of the judgment dismissing their petitions as erroneous, have prosecuted appeals, seeking a review and reversal of that judgment.

The question presented upon this appeal is whether the assailed transfer made by Webb and his wife on March 16, 1940 of Webb's interest in their jointly owned property, without consideration other than love and affection, to their three infant children is fraudulent and void under the provisions of sections 1906 and 1907, Kentucky Statutes, as to these appellants, who seek on that ground to have the conveyance set aside and Webb's interest in the property conveyed subjected to the payment of his debts owing them, even though they became his creditors subsequent to the making of the attacked conveyance, with the exception of two small items in one of the accounts, too trivial in amount to be here worth mentioning.

The facts alleged in the petitions and as shown by the evidence are: That some three or four years following the marriage of the appellees, Walter and Dora Webb (in 1934 or 1935), they having at that time accumulated some money, Webb went into the mercantile business at Hensley, Clay county, Kentucky, in the operation of which he was assisted and helped by his wife.

It is further alleged and shown that this mercantile business proved so profitable that they were soon able to and did purchase on October 24, 1938, a certain Clay county farm at a cost of some $4,000, to which a joint deed was taken in the names of the appellees, Dora Webb and Dora Webb as committee for Walter Webb, which

deed was thereupon duly recorded. Further it appears that upon their buying this farm a $1,000 cash payment was made upon its purchase price and also that they, as a further payment thereon, assumed the payment of a vendor's lien on the farm owing by their grantors in the amount of some $2,000 and the remainder of the purchase price was paid by a bank loan secured by a further mortgage on the farm. It appears further that the amount of the stated lien debts owing on this farm were never reduced below the sum of some $2,000 and that such amount was owing thereon at the time of Webb's and his wife's assailed conveyance of March 16, 1940, subject thereto, of his interest in the property in question to their three infant children, the co-appellees, Harold, Zola and Urshley Jane Webb.

There is an entire absence of proof, nor do the appellants claim, that at the time this challenged conveyance was made by the appellee, Webb, that he was indebted to them or any one; nor is there any proof that the assailed conveyance was executed with the purpose or fraudulent intent of thereafter incurring debts with the plaintiffs or any one else which he did not intend to pay and which charge too would appear rebutted by the fact that he saw fit to immediately put to public record this conveyance of his interest in the property, which quite sufficiently freed it from the vice of being of secret character and answered the charge that he then contemplated purchasing merchandise from those from whom he might later fraudulently obtain credit on the faith of their belief in his continuing ownership of an half interest in the farm and its appurtenances.

So far as the record discloses, Webb had no existing creditors, nor owed anything to any one, at the time of making his challenged conveyance of his interest in the farm to his children and, therefore, having no creditors, no one was in a position to complain of injury or of being defrauded by reason of his making the conveyance under such attending circumstances.

The appellants (plaintiffs below), who seek in their consolidated suits to set aside Webb's conveyance of his interest in the property to his children, where same was, simultaneously with the execution of the deed conveying it, duly put to record, cannot be heard to complain that the same was a subterfuge and fraudulent cover scheme, having for its fraudulent object his later effecting credit

transactions with them on the faith of his ownership of the property, where they were charged with legal or constructive notice, by reason of the recordation of the deed at the time executed, that Webb was no longer the owner of any interest in the property. If, however, they extended appellee credit on his representations made that he still owned an half interest in or was the sole owner of the farm in question, notwithstanding his conveyance of all interest therein, which was in nowise secret where simultaneously with its execution it became a matter of public record, it was negligent of them to do so, the rule being that even a voluntary conveyance is good as against subsequent creditors, unless executed as a cover for future fraudulent schemes or was executed with the fraudulent intent to hinder and delay those thereafter extending him credit in the collection of his subsequently made debts with them.

It is to be remembered that, as stated supra, these actions, challenging the integrity of the conveyance they seek to set aside and subject the property thereby conveyed to the payment of their subsequent claims, were instituted by the appellants under sections 1906 and 1907, Kentucky Statutes (KRS 378.010 and 378.020, respectively).

Section 1906 provides that: "Every gift, conveyance, assignment or transfer of * * * any estate, real or personal * * * made with the intent to delay, hinder or defraud creditors * * * shall be void, as against such creditors, purchasers and other persons."

Section 1907 concerns conveyances made without valuable consideration and provides that they "shall be void as to all his (grantor's) then existing liabilities, but shall not, on that account alone, be void as to creditors whose debts or demands are thereafter contracted." (Parenthesis ours.)

The conveyance here sought to be set aside by subsequent creditors is assailed under section 1906, under the provisions of which, as said in Peyton et al. v. Webb et al., 96 S. W. 839, 840, 29 Ky. Law Rep. 1151, the burden is imposed upon the creditor of showing "by facts or circumstances that the conveyance was made with a fraudulent intent before the property can be subjected. It is the intent and purpose with which the debtor acts that renders the conveyance fraudulent, and this must be determined by the facts in each particular case."

O'Kane v. Vinnedge, 108 Ky. 34, 55 S. W. 711, 21 Ky. Law Rep. 1551; Rose v. Campbell, 76 S. W. 505, 25 Ky. Law Rep. 885; Frazer v. Frisbie Furniture Co., 86 S. W. 539, 27 Ky. Law Rep. 688.

Also, it was further said by this court in the case of Marler et al. v. A. L. Greenburg Iron Co., 216 Ky. 682, 288 S. W. 676, 677, that: "It has long been the settled rule in this state that a conveyance is not void as to subsequent creditors unless made with a fraudulent intent; that the burden of proving fraud is on those who attack the conveyance; and the mere fact that it was voluntary is not a sufficient ground for setting the deed aside."

Here it may be said, as there, that there is no evidence that the appellee Webb was indebted to any one when the assailed deed was made nor were there any suspicious circumstances or badges of fraud shown attending the conveyance, from which the inference could be drawn, bringing it within the scope of section 1906 KS, that he made it with the fraudulent intent of defeating any then contemplated future indebtedness or the particular obligations involved which he did not incur until months later.

To like effect it is said in 24 Am. Jur., section 141, page 283, dealing with fraudulent conveyances and with particular reference to subsequent creditors, that: "At common law, a conveyance could be attacked as fraudulent as against creditors of the transferrer only by persons whose claims existed at the time the conveyance was made. One whose demand came into existence thereafter could not complain of the transaction. However, the Statute of 13 Elizabeth and analogous enactments afford protection against actual fraud to one whose demand has come into existence subsequent to a conveyance by his debtor."

Further it is said, under the heading, "Requisites as to Fraudulent Intent" in fraudulent conveyances, in section 142, page 283 of the same authority, that: "If the property was conveyed by the debtor without actual fraudulent intention, the creditor may not question the transaction, although the conveyance may have been voluntary or without consideration. On the other hand, if the transfer was made with intent to defraud subsequent creditors, the transaction will be set aside, although the transferrer may have been solvent and al-

though a valuable consideration may have been paid by the transferee.'' See also to like effect 37 C. J. S., Fraudulent Conveyances, section 134, page 962 and section 137, page 963.

A conveyance is fraudulent within the purview of section 1906, Kentucky Statutes, KRS 378.010, when its object or effect is to defraud another, or intent with which it is made is to avoid some duty or debt due by, or incumbent on, the party making the transfer.

As said in McDonough et al. v. McGowan, 165 Ky. 425, 177 S. W. 277, 278: ''It is the well-settled rule that, where badges of fraud attend upon a conveyance which is attacked as fraudulent, their effect is to shift to the grantee the burden of evidence, and he must rebut the inferences thereby created, and sustain the bona fide of the transaction. Magic City Coal & Feed Co. v. Lewis, 164 Ky. 454, 175 S. W. 992; Perry v. [H.] Krish [& Co.], 157 Ky. 109, 162 S. W. 555; Stix v. Calender, 155 Ky. 806, 160 S. W. 514; 20 Cyc. 439.''

In the cited case of Magic City Coal & Feed Co. v. Lewis, 164 Ky. 454, 175 S. W. 992, the court set out and defined these badges of fraud as follows:

1. Fictitiousness of consideration and false statements.

2. Inadequacy of consideration.

3. Concealment or failure to record.

4. Insolvency of grantor.

5. Transfer of all of debtor's property when he is embarrassed or insolvent.

6. Failure of parties to testify.

A reading of the record discloses that none of these named badges of fraud attended upon the appellee Walter Webb's conveyance of his interest in the property in question to his infant children without valuable consideration.

To such effect was it further said in the case of Dugan's Ex'x et al. v. Daugherty et al., 146 Ky. 187, 142 S. W. 232, that a conveyance without consideration is void as to existing liabilities, but not as to debts thereafter created.

In that case the appellee, George Daugherty, purchased two lots in the city of Elizabethtown, Kentucky,

for $250 and had them conveyed to his young daughter, the deed being put to record a few days after it was made. Daugherty later became indebted to Dugan and failed to pay the indebtedness on account of insolvency. An action was brought in 1910 by the executrix of Dugan against him and his daughter to set aside the conveyance made to her upon the ground that it was fraudulent and have the property subjected to the payment of the debts. The evidence showed that Daugherty, at the time he purchased the lots which he conveyed to his daughter, had some property and did not owe any debts. Such being the facts, the court said: ''It is manifest from the evidence, which is very brief, that at the time these lots were conveyed to his child he (the appellee) did not contemplate becoming indebted to Dugan, or have in mind that he would ever owe him anything, and that he did not have the property conveyed to his daughter with the purpose or intent of defrauding Dugan, or any one else. The conveyance was, of course, without consideration, and would have been void as to his existing liabilities, but not as to debts thereafter created, as were the ones sued on by appellant. There is no evidence whatever to bring the case within the scope of section 1906 of the Kentucky Statutes * * * providing in substance that every conveyance made with intent to delay, hinder, or defraud creditors, purchasers or other persons, shall be void.''

Appellants charge in their petitions that some months after Webb's conveyance of his property interest to his children without consideration, they, at his special instance and request, sold and delivered goods, wares and merchandise to him of the aggregate value of more than $3,000, for which he agreed to pay the respective amounts owing them therefor ''net sixty days,'' but that he had failed to pay same though various demands had been made upon him. Wherefore they prayed judgment against the defendants, Walter and Dora Webb and their three infant children (their pleadings and the facts shown being very similar to those presented in the Dugan case, supra) for the sum of their respective accounts, with interest, and ''that the fraudulent deed made or attempted to be made by the appellees on March 16, 1940'' be so held and adjudged to be cancelled, and that the land ''therein attempted to be conveyed'' be adjudged in lien to plaintiffs for full satisfaction of the judgments sought in said actions and that all

necessary orders be made in appointing a guardian ad litem for the three infants and a corresponding attorney for the nonresident infant, Harold Webb.

The learned chancellor, after considering the pleadings and proof, refused to set aside appellee's assailed conveyance of his property to his infant children as made with the fraudulent intent to cheat, hinder or delay Webb's creditors and dismissed the petitions with costs, including in his judgment an allowance, based on proof heard, of $250 for the guardian ad litem attorney and the sum of $55 to the same attorney as warning order attorney for the nonresident infant appellee, Harold Webb, and that such costs be ratably charged against the plaintiffs.

The plaintiffs' (here appellants) motion made for a reduction of the $250 fee allowed the guardian ad litem attorney having been overruled, they here ask that the same be reviewed and reduced as excessive.

Our review of the record indicates that the learned chancellor's ordered fee allowance was not improper nor excessive, in view of the volume of work the record shows he was required to perform. Therefore, the motion is overruled and the allowance approved.

Applying the tests and principles announced supra to the determination of the questions before us, we are of the opinion that they were correctly applied by the learned chancellor, from which it follows that his judgment, in dismissing the appellants' petitions, should be and it is affirmed.