Rena TRENT, Appellant,

v.

Curtis CARROLL et al., Appellees.

Court of Appeals of Kentucky.

March 20, 1964.

As Modified on Denial of Rehearing June 19, 1964.

88

Henry R. Wilhoit, Jr., Wilhoit & Wilhoit, Grayson, for appellant.

Thomas D. Theobald, Jr., Grayson, for W. W. Lewis and Gussie Lewis, appellees.

MONTGOMERY, Judge.

Rena Trent recovered a judgment for $6,150 against Curtis Carroll as compensation for injuries sustained. She then filed this action to set aside a deed from Carroll to W. W. Lewis as a fraudulent conveyance under KRS 378.010. Lewis alone defended. Judgment was rendered dismissing her complaint. Appellant contends that appellee Lewis was not a purchaser in good faith and that the consideration paid for the property was not equal to its reasonable value.

Appellant was injured on April 25, 1960. She spent nine weeks in a hospital. Carroll paid $840 on the hospital bill, leaving a

part unpaid, and gave appellant $500 in addition. No release was taken from her. On July 6, 1960, Carroll conveyed a 430-acre farm to Lewis for $5,500 in cash. The record indicates that Carroll had no other property in Kentucky.

On or about April 15, 1961, appellant sued for damages. Service was had on Carroll pursuant to KRS 188.030 as a nonresident. Carroll's wife had been residing in Ohio for several years. Carroll had spent part of his time in Ohio and the remainder on the farm. When he sold the farm he became a permanent resident of Ohio. He did not appear or testify in the fraudulent conveyance action.

Among other things the Chancellor found that in July 1960, before the conveyance, Lewis had had an attorney search the title records on the farm for the existence of liens or suits, with negative results; that Carroll had advised Lewis that he had settled fully appellant's claim; that Lewis had paid Carroll a fair price for the property; and that "the defendant, W. W. Lewis, used all precautions to check the title to said property, and that he had no notice of any claim against said property."

■■ The finding of the Chancellor on the issue of fair price must be sustained. The evidence as to the value of the farm varied from $4,000 to $15,000. The farm had a quantity of merchantable timber and a 1.9-acre tobacco base. Lewis received the current tobacco crop in the purchase. There was proof that Lewis had offered more for the farm before the accident; that he told a neighbor immediately after the purchase that the farm was worth $10,-000; and that he also had said that he had "got it cheap enough" and it "looked like he had a good bargain." On the conflicting evidence though, we are unable to say that the Chancellor's finding of a fair price is clearly erroneous. CR 52.01. However, such testimony is significant in consideration of the question of good faith.

KRS 378.010, concerning fraudulent conveyances, contains the following: "This

section shall not affect the title of a purchaser for a valuable consideration, unless it appears that he had notice of the fraudulent intent of his immediate grantor * * *." Upon the findings made the Chancellor concluded, as a matter of law, that Lewis "used all reasonable means to ascertain the condition of the title of the said property, and that the conveyance was made for an adequate consideration, and in good faith."

■ From the record it is concluded that Carroll fraudulently intended to defeat the claim of appellant. When a conveyance is attacked as fraudulent and badges of fraud are shown, the burden of proof to show good faith is on the grantee. McDonough v. McGowan, 165 Ky. 425, 177 S.W. 277; Alt v. Burt, Ky., 242 S.W.2d 974.

■ "Badges of fraud" are conspicuous in this case. The transfer of the farm in anticipation of or pending a lawsuit is a badge of fraud. Hager v. Coleman, 307 Ky. 74, 208 S.W.2d 518. Carroll unquestionably transferred his property to defeat appellant's claim. The transfer of all of Carroll's property subject to execution in the state is another badge of fraud. Allen v. Ligon, 175 Ky. 767, 194 S.W. 1050; Pope v. Cawood, 293 Ky. 660, 170 S.W.2d 55; Wolf v. Eblen, 6 Cir., 101 F.2d 469. The farm transferred by Carroll to Lewis was the only property shown to have been owned by him at the time. In Sewell v. Damrell's Adm'r, Ky., 267 S.W.2d 398, it was held that "[i]f a transfer is made by one against whom there is pending an action for tort, this is a badge of fraud, especially where the conveyance leaves the grantor without any estate." Inadequacy of consideration is another badge. Campbell v. First Nat. Bank of Barbourville, 234 Ky. 697, 27 S.W.2d 975; Trustees of First Nat. Bank of Stanford v. Saufley, 268 Ky. 732, 105 S.W.2d 605.

■ Apparently the Chancellor rested his conclusion of "good faith" on the findings that Lewis had had the title examined

and had been advised by Carroll that the claim had been settled. When there are badges of fraud the purchaser is put on inquiry, and his good faith depends upon the sufficiency and reasonableness of his inquiry. 55 Am.Jur., Vendor and Purchaser, Section 703, pages 1080 and 1081.

Lewis made no inquiry of appellant as to whether her claim was settled or of the hospital where her bill had been partially paid, although little effort would have been required to do so. There are strong indications that Lewis did inquire at the office of appellant's attorney and was advised that the claim had not been settled. In his testimony Lewis did not deny such questions when asked and sought to evade them. His testimony on this point on cross-examination follows:

"Q.–1 Doc, was this occasion when you say that Carroll came there to your place and you made that deal with him, how long was that after you had been down to my office to ask if Carroll and Rena Trent had settled?

"A.– That was in July.

"Q.–2 You had sometime before that come to my office, and you knew I represented her?

"A.– I can't tell you that definite.

"Q.–3 Did you come there and ask me and I told you?

"A.– Yes, sir, I know him mighty well and he said he wanted to settle with that woman. I think he wrote her a letter. And I went to Tom Theobald. He said he paid that woman's hospital bill and she wasn't satisfied, said they will agree with him for her time. And I never heard it mentioned any more until the time he sold me—

"Q.–4 But at the time you came to my office I told you that the claim had not been settled and I warned you—

"A.– I don't remember—

"Q.–5 I told you at that time it wasn't settled and warned you against your buying that property as long as—

"A.– I—

"Q.–6 And you said you would go up and get Tom Theobald, didn't you? Didn't you mention that to me? And I warned you about that?

"A.– When was that? I never—you talking about when I bought it? You are talking about when I bought it. Nothing filed or nothing started on it when I bought it.

"Q.–7 But I told you at the time that the claim had not been settled and she still had a claim.

"A.– I never heard no claim about it. They wasn't nothing started."

■■ If Lewis had not been in the office of appellant's attorney inquiring about the settlement of the claim, a simple denial would have been sufficient. His evasive and unresponsive answers are a failure to deny, which constitutes an admission. When one fails to speak up, if the occasion demands it, the failure to do so is tantamount to an admission. The testimony of Lewis indicates strongly that he thought he could color the transaction with good faith by a title search and by reliance on Carroll, who was tainted with fraud.

■■ The burden was on Lewis. It was his duty to rebut the inference created by the badges of fraud and sustain the good faith of the transaction. McDonough v. McGowan, 165 Ky. 425, 177 S.W. 277; Myers Dry Goods Company v. Webb, 297 Ky. 696, 181 S.W.2d 56; Sewell v. Damrell's

Adm'r, Ky., 267 S.W.2d 398. Under the circumstances Lewis has failed to do so. The finding that Lewis "had no notice of any claim against said property" is irrelevant. There is no finding that Lewis had no notice of appellant's claim. The court's conclusion of law that Lewis acted in good faith is not based on appropriate findings of fact. CR 52.01.

Judgment reversed.