## J. B. Colt Company et al. v. Brown et al.

(Decided February 23, 1932.)

RUTH L. WELLS and KIRK & WELLS for appellants.

F. P. BLAIR for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE DIETZMAN—
Affirming.

In 1921, J. M. Brown bought of the appellant a carbide lighting plant. Thereafter a controversy arose between them concerning the adequacy of the plant to do

524

the work for which it was intended, and shortly after 1925 appellant brought suit to recover the purchase price amounting to $314 and interest. Defense was made, and in the lower court J. M. Brown was successful. On appeal to this court, the judgment was reversed, J. B. Colt Co. v. Brown, 224 Ky. 438, 6 S. W. (2d) 473. On the return of the case to the circuit court, judgment was entered in favor of the appellant for the amount prayed for in its petition. Thereupon an execution was issued and levied on a tract of land lying in Johnson county, Ky. The sheriff being about to sell the land under this execution, Joseph D. Brown and Mrs. Belle Moore brought this suit to enjoin the sale on the ground that the land belonged to them. The appellant, a party defendant to this suit, filed its answer and counterclaim setting up that J. M. Brown had conveyed the land in question to Joseph D. Brown and Mrs. Belle Moore, his children, with fraudulent intent to cheat, hinder, delay, and defraud his creditors and without any consideration therefor, for which reason it prayed that such conveyances be held void as against appellant's judgment. A reply traversed these allegations. Proof was then taken which established these facts: In 1881, Archibald Brown conveyed the land in question to his son, J. M. Brown, "together with the child he now has, Joseph D. Brown, and all other lawful heirs he may have hereafter . . . to each one an equal share." So far as this record shows, the only children J. M. Brown has ever had were Joseph D. Brown, Andrew J. Brown, and Mrs. Belle Moore. The record shows, however, that Mrs. Moore never made any specific claim to any part of this land under the Archibald Brown deed, although, as we shall see, the court awarded her an interest equal to that of her brothers and father. In 1918, Andrew J. Brown conveyed to Joseph D. Brown "his undivided one-third interest" in the tract of land above mentioned. On March 25, 1925, J. M. Brown conveyed to his son, Joseph D. Brown, 300 acres out of the boundary of the land conveyed by the Archibald Brown deed of 1881, and conveyed to his daughter, Mrs. Belle Moore, the remainder of that tract. It is these two conveyances which appellant by its answer and counterclaim sought to have set aside as fraudulent and voluntary. So far as the conveyance to Joseph D. Brown is concerned, the evidence tended to establish that it was done to carry out a partition of the lands conveyed

by the Archibald Brown deed. The lower court did not set aside this conveyance to J. D. Brown, and no complaint is made on this appeal of that action of the court. Hence we dismiss that conveyance from further consideration. Turning our attention now to the Belle Moore conveyance, we find that Mrs. Belle Moore lived at Ashland at the time this conveyance was made to her. She testifies, and there is no evidence to contradict her, that she knew nothing whatever about any controversy her father had with the appellant, or that he was indebted to appellant, or that any litigation between them was contemplated. The conveyance itself recites that it was for the cash consideration of $100, and that the grantor reserved the right and privilege to sell the land at any time in his lifetime that he deemed it necessary for his maintenance. The evidence shows that no actual cash passed between the parties, although Mrs. Moore testifies that she had advanced to her father prior and subsequent thereto sums of money aggregating much more than this $100. The real consideration as the evidence establishes was her undertaking to support and maintain her father during the rest of his life. The reservation contained in the deed covering his right to convey any part of the land during his lifetime for his maintenance was inserted to secure him in the performance on her part of this undertaking. The evidence shows that subsequent to this conveyance, and for at least two years, J. M. Brown lived with Mrs. Moore in Ashland, and that she supported and maintained him there during that time. At the end of this period, Mrs. Moore first discovered, so far as this record shows, the claim of the appellant and the controversy between it and her father. She continued thereafter to furnish some support and maintenance to her father. The record also shows that, in 1928, J. M. Brown, by a deed in which Mrs. Belle Moore and her husband joined, conveyed a part of the tract he had theretofore conveyed her to Okel and Proctor Van Hoose for the sum of $500, which J. M. Brown used to discharge some indebtedness he was under. On this showing, the court held that J. M. Brown and Mrs. Belle Moore under the deed of Archibald Brown of 1881 each took an undivided one-fourth interest in and to that tract of land; that, in so far as the deed of J. M. Brown to Mrs. Moore undertook to convey his interest in the tract, it was void as against the creditors of J. M. Brown, but that as Mrs. Moore had taken the conveyance in good

faith she was to the extent of the consideration she had paid, or furnished entitled to be reimbursed, and it gave her a lien on the land superior to appellant's claim, to secure her in the payment of this consideration which it fixed at $1,500. Appellant does not complain of that part of the judgment fixing the interests of Mrs. Moore and J. M. Brown in the land under the Archibald Brown deed, but does complain of the court's action in giving Mrs. Moore a lien superior to its claim to secure her in the payment of the consideration she had furnished prior to her discovery of the controversy between her father and the appellant. This is the sole issue presented on this appeal.

The amount which the court allowed Mrs. Moore for the support and maintenance of her father during the two years in question appears to be liberal, but she testified that it was worth much more than what the court allowed her, and there is no evidence in the record to the contrary. We cannot therefore say that the court erred in fixing the value of the consideration furnished by Mrs. Moore at $1,500. We are also inclined to the belief that J. M. Brown conveyed this property to his daughter in the effort to put it beyond the reach of his creditors, or at least that of the appellant. But Mrs. Moore, who lived many miles away from the place where this land was located, testifies that she knew nothing whatever about this controversy, and that her father on the signing of the deed at once came to live with her and stayed with her during the next two years, and there is nothing in this record beyond the inferences which may be drawn from the conveyance to her of this land by her father at the time he was in a controversy with the appellant to contradict her.

Under all the circumstances, we are constrained to the view that notice of her father's fraudulent intent was not fastened upon Mrs. Moore, and that, to the extent she furnished and paid the consideration before she discovered it, she was a bona fide purchaser for value without notice and entitled to the lien on the land which the court gave her to secure her in the repayment of the consideration so furnished. In the case of Wood v. Goff's Curator, 7 Bush 59, the facts were that Goff in his lifetime conveyed certain lands and personal property to Michael Gilbert, the sole consideration being the service and use by Goff as long as he should live of a slave owned by Gilbert. After Goff's death, a creditor of his

who was such at the time of Goff's conveyance to Gilbert brought suit to set aside such conveyance as fraudulent. In holding that the estate of Gilbert who had also in the meantime died was entitled to a lien on the land conveyed to him by Goff for the value of the use of the slave intrusted by him to Goff inasmuch as Gilbert acted bona fide in the transaction, although Goff had not, we said: "Conceding that the deed to Gilbert was fraudulent and void as to the creditors of the grantor, an essential inquiry is presented whether it was actually or constructively fraudulent; for if it was fraudulent in fact it could not stand, even for the purpose of reimbursement or indemnity; while if it was only legally or constructively fraudulent, it should have been upheld in favor of the grantee to the extent of securing restitution of the amount of the actual consideration given or paid by him, and only the excess of the property should have been subjected to the plaintiff's debt. Short v. Tinsley, 1 Metc. (Ky.) 397 [71 Am. Dec. 482]; Whitaker v. Garnett, Etc., 3 Bush 402 [Boyd & Suydam v. Dunlap]; 1 Johns, Ch. Rep. [N. Y.] 478."

In Diamond Coal Co. v. Carter Dry Goods Co., 49 S. W. 438, 20 Ky. Law Rep. 1444, the same principle as that quoted from the Goff case, supra, was applied. See, also, Wilson v. Dulin, 234 Ky. 419, 28 S. W. (2d) 463.

It follows that the lower court did not err in entering the judgment it did, and such judgment is affirmed.