## Security Bank v. Zimlich's Executrix et al.

(Decided Dec. 3, 1935.)

[black redaction bars]

AL M. MARRET for appellant.

C. MAXWELL BROWN for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming in part and reversing in part.

In April, 1933, Leo J. Zimlich's assets were esti-
mated at $15,444 and his liabilities at $33,477. He then
executed mortgages on his real estate to secure debts to
his relatives and an intimate friend. The Security Bank
held a past-due note for $1,000 on which his brother
was surety. It brought suit to set aside the mortgages
and the conveyances hereinafter referred to as being
fraudulent. Zimlich's early subsequent death resulted
in a suit to settle his estate, and in it the claims of the
several creditors were litigated. The court set aside
the mortgages and transfers as fraudulent, but there is
no appeal from the judgment except on two points.

A son, Amos L. Zimlich, proved that in July, 1932,
he borrowed $400 on an insurance policy and loaned it
to his father. A few weeks later, when he sought to
collect the money, his father advised that he could not
pay, but needed more money. Thereupon he surren-
dered the policy for its cash value and obtained $345
more, which he let his father have. For these two sums,
he testified, his father sold him nine shares of stock in
the Falls City Ice & Beverage Company. He examined
the certificate, sealed it in an envelope, and gave it to
his father to put in his safety box with his (the son's)
insurance papers. It remained there until he moved to
Madison, Ind., on February 1, 1933, when he took it
with him. The stock, however, was not transferred on
the books of the company to the son until April 12, 1933.
The court set aside this transfer, but awarded the son
a lien on the stock for the money he had paid for it.

The widow, Mrs. Hannah Zimlich, established that
in 1930 she had obtained $2,000 from her father as an
advancement and let her husband have it; that he
agreed at the time to give her either outright or by way
of partial security five shares of stock in the Gardeners
& Farmers Market Company, which, it appears, was

then worth $1,000; that the certificate could not be located; when application was made to the company for a duplicate, it was suggested that she wait a year and then if the certificate could not be found and she would execute an indemnifying bond, a duplicate would be issued; that the bond was not made until early in 1933, and in June the duplicate certificate was issued to Mrs. Zimlich and the stock transferred on the books of the company. The court also set aside this transfer and adjudged Mrs. Zimlich a lien on the stock to reimburse her.

The Security Bank appeals from these two parts of the judgment and contends that no lien should have been adjudged either the son or the widow.

As to the claim of Amos L. Zimlich, it is contended that there was no transfer for a valuable consideration and that several inconsistencies in his testimony, together with the entire circumstances disclosed, refute his testimony and that it is not sufficient to sustain the burden resting on him to overcome the result of showing the badges of fraud so manifest in the transaction. The particular aspect of the question with which we are interested is whether the son was a party to the constructive fraud upon the father's creditors or innocent thereof, that is, whether the transfer of the stock for the money paid his father was in good faith so far as he was concerned. While the circumstances raise a suspicion of knowledge of the conditions on the part of the son, yet it is disclosed that the stock was worth at the time only about $775, or approximately what the son undoubtedly paid to his father. The son was away from the city practically all the time, and there is no substantial evidence disproving his contention that he knew nothing about his father's affairs. Zimlich owned considerable property and had been a prosperous and successful contractor. Indeed, there is no evidence that in the summer of 1932 he was insolvent so as to bring this transaction within the terms of the statute relating to fraudulent conveyances. See Hickman Bank & Trust Co. v. Pickard and Mayberry, 207 Ky. 772, 270 S. W. 30. However, there is no cross-appeal. Certainly the question is doubtful and, having confidence in the chancellor, we accept his decision on the facts. Since that conclusion is that the son as transferee acted in good faith, and that notice of his father's legal or constructive fraudulent intent was not fastened upon him,

it is to be determined whether it was correct to award him a lien on the stock to secure restitution of what he had paid for it.

Section 1906 of the Statutes declares that every gift, conveyance, assignment, or transfer of or charge upon any property made with the intent to delay, hinder, or defraud creditors, and every evidence of debt given shall be void against such creditors. But there is added the provision that the title of a transferee for value shall not be affected unless it appear that he had notice of the fraudulent intent of his immediate grantor or of the fraud rendering void the title of such grantor. From an early date, the statute has been construed as authorizing the allowance of an equitable lien to the mortgagee or transferee on the property, the sale, the transfer, or mortgage of which is set aside as constructively fraudulent, to secure the sum paid as against the creditors if the grantee, transferee, or mortgagee actually paid the consideration without notice of the fraudulent purpose of the debtor. After restitution, the excess of the property is subject to the debts of the transferor or grantor. Short v. Tinsley, 1 Metc. (58 Ky.) 397, 71 Am. Dec. 482; Davis v. First National Bank of Princeton, 187 Ky. 198, 218 S. W. 987; J. B. Colt Co. v. Brown, 242 Ky. 523, 46 S. W. (2d) 1074; Farmers' Bank of Fountain Run v. Hagan, 242 Ky. 535, 46 S. W. (2d) 1084, 1085; Farmers' Bank & Trust Co. v. Peters, 226 Ky. 403, 11 S. W. (2d) 103. The judgment therefore is correct in awarding Amos Zimlich a lien on this stock to the amount he had paid for it.

It is sufficient to say in relation to the judgment affecting Mrs. Zimlich that section 2128 of the statutes makes invalid as to third persons any gift, transfer, or assignment of personal property between a husband and wife unless the same shall be in writing and acknowledged and recorded. This is applicable to the transfer of corporate stock. Hawley Coal Co. v. Bruce, 252 Ky. 455, 67 S. W. (2d) 703. A transaction coming within this statute is of a different class than one constructively fraudulent under the terms of section 1906. So far as third persons without actual notice is concerned, it is fraudulent and void per se, and the same as if the sale or transfer had never in fact been made. In Eberhardt v. Wahl's Adm'r, 124 Ky. 223, 98 S. W. 994, 30 Ky. Law Rep. 412, the husband transferred to his wife ten shares of stock to secure her for one note which she

had paid and to protect her from liability on another note which she had signed for him, and there was no record made of the transfer. Another creditor of the husband attached the stock. It was held that the arrangement between the husband and wife was void and she acquired no lien on the stock by reason of its transfer to her, although under the facts she had a lien on the stock through subrogation. See, also, Stroud v. Ross, 118 Ky. 630, 82 S. W. 254, 26 Ky. Law Rep. 521; Jones v. Louisville Tobacco Warehouse Co., 135 Ky. 824, 121 S. W. 633, 123 S. W. 307.

Mrs Zimlich was chargeable with notice of this statute and cannot be regarded as one who unwittingly or innocently aided an insolvent debtor to commit a constructive fraud on his creditors. The court is of opinion, therefore, that the judgment is erroneous in awarding Mrs. Zimlich a lien on the stock.

Judgment affirmed as to Amos L. Zimlich and reversed as to Mrs. Hannah Zimlich.