**ALT et al. v. BURT.**

No. 10999.

United States Court of Appeals,
Sixth Circuit.

April 18, 1950.

Miller, Circuit Judge, dissented in part.

David A. Sachs, and C. E. Schindler, Louisville, Ky. (D. A. Sachs, Jr., and Alan Neil Schneider, Louisville, Ky., on the brief), for appellants.

Henry D. Hopson, Louisville, Ky. (Will H. Fulton, Henry D. Hopson, Louisville, Ky., on brief, Woodward, Hobson & Fulton, Wallace & Hopson, Louisville, Ky., of counsel), for appellee.

Before SIMONS, McALLISTER, and MILLER, Circuit Judges.

## McALLISTER, Circuit Judge.

This is an appeal from an order of the district court, denying a petition to review a summary order of a referee in bankruptcy directing appellants to turn over property in their hands to the trustee of the bankrupt estate. Appellants contend that their claim to the property, which they held adversely to the bankrupt estate, was of such a substantial nature as to require its determination in a plenary suit, and that it was error to require them, by summary order, to turn it over to the trustee.

The general rule as to the jurisdiction of a bankruptcy court in plenary and summary proceedings is clear. It is settled that a court of bankruptcy is without jurisdiction to adjudicate, in a summary proceeding, a controversy in reference to property held adversely to the bankrupt estate, without the consent of the adverse claimant, but that resort, in such a case, must be had by the trustee to a plenary suit. The mere assertion of the adverse claim does not, however, oust the court of its jurisdiction. Having power, in the first instance, to determine whether it has jurisdiction to proceed, the court may enter upon a preliminary inquiry to determine whether the adverse claim is real and substantial or merely colorable. If found to be merely colorable, the court may then proceed to adjudicate the merits summarily; but if found to be real and substantial, it must decline the merits and dismiss the summary proceeding. The test to be applied to determine whether an adverse claim is substantial or colorable is whether the claimant's contention discloses a contested matter of right, involving some fair doubt and reasonable room for controversy. If it does, the claim is real and substantial; if it does not, it is merely colorable. Harrison v. Chamberlin, 271 U.S. 191, 46 S.Ct. 467, 70 L.Ed. 897. Whether appellants' claims are real or colorable is the issue in this case.

In arriving at a determination whether appellants' claims were real and substantial, it is necessary to consider the facts giving rise to the controversy. The property which the referee summarily ordered appellants to turn over to the trustee consisted of fifty shares of stock in the Cherokee Development Corporation. What this stock represented, and how appellants became the owners of it, are of paramount importance in the decision of this case.

Anna C. Alt, one of the appellants, is the wife of George Alt, the bankrupt in this case. He filed a voluntary petition in bankruptcy on October 29, 1948, and was adjudicated bankrupt the same day. The Alts had been married some fourteen years before the bankruptcy proceedings were instituted. Prior to her marriage, Mrs. Alt had worked steadily for twenty-five years, and, as a result of her earnings, had an estate of her own. From the time of her marriage until the bankruptcy of her husband, she had continued to work and to have an estate of her own. Subsequent to the bankruptcy, she also worked, and at the time of the summary proceedings before the referee in this case, was employed by a business house, at a salary of approximately $3,050 per year, together with a bonus. During their married life, she did office work, and paid practically all of the expenses of the home in which she, her daughter, and her husband lived; employed no help, but did her own housework; and bought all her own clothes and all her daughter's clothes. Ten years before her husband's bankruptcy, she received $4,200 in cash out of the sale of a house that belonged to her and in which the Alts had been living. She afterward paid $1,300 down out of her own funds, on a contract for another home in which she and her husband were living at the time of his bankruptcy. From time to time, Alt gave sums of money to his wife in partial reimbursement of what she had paid out for their joint living expenses and clothing for herself and her daughter; but practically all of her own income was used for this purpose. According to her testimony, which is undisputed, she had a large amount due from her husband, according to an agreement between them, for all the expenditures she had made. Six years

after they had been married and eight years before the bankruptcy, Alt had agreed that he was going to let her have some property that would be security for her because of his dangerous heart condition, and in payment for the monetary advances she had made on his behalf.

. Sometime in May, 1947, Alt, at the insistence of his wife for some kind of security, according to their understanding, undertook to build an apartment in which his wife would own the main interest. In carrying out his plans, he first found a lot in Louisville, priced at $15,000. Alt paid $2,000 down and a deed to the lot was taken in his name, with a lien reserved for the balance of $13,000. Thereafter, a corporation known as the Cherokee Development Corporation was organized on June 20, 1947, with capital stock of $5,000, represented by fifty shares of $100 each. At the first meeting, on the day of organization, a resolution was adopted providing for the purchase of the lot in question for the sum of $15,000. The resolution further provided that the lot be paid for by the corporation by the issuance of forty-one shares of the capital stock to Anna C. Alt, three shares to George Alt, three shares to C. E. Schindler, and three shares to C. E. Schindler, Jr., the attorneys for the corporation.

Pursuant to the resolution, Alt conveyed the lot to the corporation, and in payment, the corporation issued forty-one shares of its capital stock to Mrs. Alt, three shares to George Alt, and three shares to the Schindlers. Alt immediately endorsed his three shares over to Mrs. Alt, so that she thereby became the record owner of forty-four out of the fifty shares of the capital stock.

Both Alt and his wife testified that the sum of $2,000 which he paid for the lot consisted of money which he owed to Mrs. Alt, that the lot was purchased for her benefit and transferred to the corporation on her behalf, and that the issuance of the stock to her in consideration of the transfer of the lot constituted payment for her contribution to the capital of the corporation.

The only capital that had gone into the corporation was the $2,000 interest in the lot. After the conveyance of the lot to the corporation, it borrowed, on a Federal Housing Administration loan, the sum of $170,600, out of which it paid the $13,000 balance due for the purchase of the lot, and proceeded, under a construction contract with George Alt, to erect upon the lot an apartment building of one hundred rooms. It turned out to be a most successful venture. On the hearing of the case, it was asserted, on behalf of the trustee, that Mrs. Alt's stock, which had been issued for the $2,000 interest in the lot, had increased in value more than $30,000 by reason of the construction of the apartment building. Alt was entitled to and received a fee of $25,590 for his services as contractor and architect for the building, which he received and contributed to the payment of expenses of the apartment house as it was constructed.

More than sixteen months after Mrs. Alt had received her stock in the Cherokee Development Corporation on the purchase of the lot by the corporation, her husband was adjudicated bankrupt.

In the summary turn-over order, the referee determined that the transfer of the lot by Alt to the corporation and the issuance of the stock by the corporation to Mrs. Alt and the Schindlers was for the purpose of hindering, delaying, and defrauding Alt's creditors. The creditors in question, in so far as ascertainable from the record before us, consisted of parties for whom Alt had built homes in Louisville. Eight of them testified before the referee. They stated variously that "Things would start going wrong" and that they would call up Alt and could get no satisfaction. One purchaser was supposed to get screen doors and did not receive them. In another home built by Alt, a soil pipe in the basement would flood back, and in order to remedy it, Alt put a sump pump in but afterward "things kept happening right along." In another house, "trouble" and "defects" developed, and Alt was told he would be sued unless the defects were remedied; in another house, water poured into the basement "by the barrels full" during rain, plaster cracked, and the purchasers wanted Alt

to come over and see it, but he failed to do so; others noticed "defects" when they moved in and told Alt that unless he fixed them, they would "see about it" and they afterward sued and secured a judgment; another party noticed numerous defects and informed Alt he would take action against him unless remedied; Alt was told that if he did not fix the front door of another house, he would have a lawsuit on his hands. All of these houses were purchased before the Cherokee Corporation was organized, and all of the complaints were made before that time.

The claims of these creditors, growing out of an alleged breach of warranty, were all unliquidated claims at the time Mrs. Alt received her stock from the corporation. Whatever may have been the defects in the houses resulting from improper or unfinished construction, there is no evidence of, and no way of ascertaining from the record, what the amount of the damage was resulting to these claimants.

There is no evidence in the record that Alt was insolvent at the time the stock was transferred to Mrs. Alt. He subsequently, as has been remarked, received more than $25,000 as a fee for his contracting and architectural services, and afterwards sold his car for $1,200 in cash. The fact that all of this money thereafter went into construction of the apartment building does not discount the fact that he had a considerable income and assets at the time of the issuance of the stock to Mrs. Alt, and subsequently. It is also to be emphasized that the claims that had been made against Alt at the time of the issuance of the stock to his wife were unliquidated, and were based upon claimed breach of warranty for faulty or unfinished construction of houses which he had built and sold; and that the amount of damages claimed or proved as a result of such breach of warranty nowhere appears.

The following, then, in brief, constitutes what appellants contended before the referee and what they now urge before this court on appeal: Mrs. Alt claims that the sum of $2,000 paid for the lot by her husband was a payment of her money which had been due her, under an agreement with her husband, for many cash loans to him and expenditures made by her on his behalf; that the money was paid for her benefit for the purpose of securing the issuance of stock in the corporation in her name, and as her own property, in payment of the cash loans and expenditures for her husband. Appellants C. E. Schindler and C. E. Schindler, Jr., claim that the six shares of stock were issued to them in part payment for legal services in organizing the corporation. Six shares out of fifty issued would be 12% of the stock. The total contribution of capital to the corporation was the sum of $2,000 paid for the lot. It is not unreasonable to suppose that at the time of the organization of the corporation, the issuance of the six shares would appear to represent 12% of the capital, or $240, not an excessive amount for legal services to two lawyers who organized and incorporated the company, more than a year before the bankruptcy proceedings. Appellants also submit that there was no proof whatever that Alt was insolvent at the time of the organization of the corporation; and that there was no evidence that the stock was issued to Mrs. Alt and the Schindlers with the purpose of defrauding, delaying, and hindering Alt's creditors. In our view, the claims of appellants are real and substantial, and not merely colorable. The bankruptcy court did not have jurisdiction to decide them by summary order; their determination required a plenary suit.

In Courtney v. Shea, 6 Cir., 225 F. 358, 361, in a summary proceeding, a wife testified that shortly after her marriage, she and her husband had entered into an understanding whereby he would deliver over most of his earnings to her; that she would pay the family expenses; and that the savings, if any, should belong to her. Seven years afterward, the husband was adjudicated a bankrupt. In the intervening years prior to bankruptcy, the wife had invested moneys which she had saved from what her husband had given her in shares of stock in building and loan companies. The trustee sought, by summary process, to compel the wife to turn over to him

such stock as representing property purchased with her husband's money. The court held that summary proceedings could not be availed of "when it appears that the property sought to be recovered is in possession of a third person and held under an adverse claim, which existed at the time the petition in bankruptcy was filed, and which, if supported by uncontradicted testimony, would sustain a judgment in favor of the claimant, even though the claim might in the end prove to be fraudulent and voidable; but of course a merely frivolous claim, such as that of an agent or bailee holding in the interest of the bankrupt, should not be allowed to defeat summary process." In view of the claimed agreement between the wife and her husband, the summary proceeding to compel her to turn over the stock purchased with funds given her by the bankrupt, was dismissed.

■■■■. Appellee, however, argues that under the Kentucky statutes, any gift, transfer, or assignment of personal property between husband and wife is invalid as to third persons unless it is in writing and acknowledged and recorded as chattel mortgages are required to be recorded, K.R.S. 404.020(2); and that, accordingly, the claim of Mrs. Alt that her husband repaid her the $2,000 which he paid down on the lot because, during a period of years, she had earned and used her money for household expenses, has no standing under the Kentucky law, and that a transfer or assignment of property between husband and wife is void as to third persons unless in writing and acknowledged and recorded. It is not clear that this statute is applicable to the facts before us. Was the purchase of the lot by Alt void because claimed to have been made with money which really belonged to Mrs. Alt? Was the transfer of the lot by Alt to the corporation void as a transfer between husband and wife? Was the issuance of stock by the corporation to Mrs. Alt void as a transfer for the same reason? Does the statutory provision apply to a gift or payment of money from one spouse to another? In advance of any ruling by the courts of Kentucky on the point, we would be most reluctant to hold

that it does. The fact that the Kentucky courts have held the statute applicable to transfers of corporate stock does not militate against our view. Appellee's contention, in effect, is that even though Alt were solvent and acted in good faith, the transfer of $2,000 by him to his wife would be void as to any subsequent creditors of his who might come into existence years after the transaction. In such a case, Alt would remain the owner of the fund of $2,000 in spite of the transfer to his wife. But on the same basis, the prior transfer of $2,000 by Mrs. Alt to her husband, while she was solvent and acting in good faith, would be void as to any of her subsequent creditors who might come into existence years after the transfer. In such a case, Mrs. Alt would remain the owner of the fund in spite of the transfer to her husband. Her subsequent creditors would be entitled to the fund rather than her husband's subsequent creditors, although years might elapse after the transfer before either of them had any creditors. This would appear a rather unseemly interpretation of the statute. The statute in question seems rather designed to protect third persons and creditors who, without actual notice of a transfer, might be thought to rely upon the record title of real property, and the registered ownership of corporate stock, as well as upon their knowledge of prior actual ownership, and apparent ownership of chattels. Moore v. Pope, 285 Ky. 125, 147 S.W.2d 67; Security Bank v. Zimlich's Executrix et al., 261 Ky. 560, 88 S.W.2d 286; Eberhardt and others v. Wahl's Admr., 124 Ky. 223, 98 S.W. 994. See also Kitchen v. Fischer et al., 293 Ky. 787, 170 S.W.2d 592. In Courtney v. Shea, supra, it was held that, notwithstanding that a Kentucky statute provided that every gift made by a debtor should be void as to his existing creditors, the provision could be relied upon only in a plenary action, although in that case, as has been stated, the wife of the bankrupt had used moneys given to her to purchase the stock, which the trustee sought to recover by summary order. While the Kentucky statute in Courtney v. Shea is not the same as the one here relied upon by the trustee, the

same rule is applicable, and the statutory provision in question can be relied upon by the trustee only in a plenary suit.

In accordance with the foregoing, the judgment of the district court is reversed.

MILLER, Circuit Judge (dissenting in part).

Since the facts in this case are undisputed and the Kentucky law applicable thereto is, in my opinion, well settled, I am unable to agree with the conclusion of the majority opinion that the claim of Appellant Anna C. Alt is more than colorable and should be disposed of in a plenary suit.

Section 404.020 Kentucky Revised Statute, which controls the decision in this case, provides that a transfer "of personal property between husband and wife shall not be valid as to third persons, unless it is in writing, and acknowledged and recorded, * * *." Under this statute it is not necessary for a complaining creditor to prove insolvency on the part of the husband or an intent on his part to delay, hinder or defraud creditors, as is required under Section 378.010, Kentucky Revised Statutes. In this case it is undisputed that we have a transfer of property between husband and wife which was not in writing or recorded. If it be treated as a transfer of stock it is an invalid transfer under the decisions of the Kentucky Court of Appeals. Security Bank v. Zimlich's Ex., 261 Ky. 560, 88 S.W.2d 286; Moore v. Pope, 285 Ky. 125, 147 S.W.2d 67. A transfer of tangible personal property has likewise been held invalid under the statute. Thomson v. Dennis' Ex., 282 Ky. 352, 138 S.W. 2d 490. Both tangible and intangible personal property are covered by those cases. I am of the opinion that a transfer of money from husband to wife, if the transaction herein involved be so regarded, is without question a transfer of "personal property" within the terms of the statute and controlled by the cases referred to.

The case of Courtney v. Shea, 6. Cir., 225 F. 358, relied upon by appellant, involved a different section of the Kentucky Statutes, and, in any event, is contrary to

our later ruling in In re Knott, 6 Cir., 134 F.2d 833, wherein summary proceedings were approved.

I am of the opinion that the claim of Mrs. Alt was merely colorable and properly adjudicated by summary proceedings.