INTERSTATE ACCEPTANCE CORPORA-
TION, Appellant,

v.

Jewell Louise LOVINS et al., Appellees.

Court of Appeals of Kentucky.

June 5, 1964.

Smith, Reed, Yessin & Davis, Frankfort, for appellant.

Chas. A. Williams, Williams & Rivers, Paducah, for appellees.

CLAY, Commissioner.

This suit was brought by appellant, a creditor, to set aside as fraudulent under KRS 378.010 certain conveyances made to appellee purchasers. The trial court found (1) the grantors (hereafter referred to as "the Lovinses") were not shown to have a fraudulent intent, (2) appellees were bona fide purchasers for value without notice, and (3) appellant was estopped to assert this claim.

The Lovinses conducted a used car business in Paducah. In August, 1960 they were indebted to appellant, who financed the business on a floor plan. The amount of this indebtedness was not liquidated at the time and fluctuated substantially from month to month.

In the latter part of August, 1960 appellant was advised that the Lovinses planned to dispose of their business and property and move to Detroit. At that time they owned three valuable pieces of urban real estate.

At or about the time appellant was advised of the Lovinses' plans, they placed all of their real estate on the market for sale and it was advertised both in newspapers and by radio. As of about a month later, September 30, 1960, no acceptable offer had been received for any of these properties.

On September 23 appellant employed an attorney, Mr. Boyl, to represent its interests in connection with the Lovinses' indebtedness to it. Appellant was apparently anxious to seek some sort of security in view of the Lovinses' plan to go out of business and dispose of their property. On that same day this attorney called Mr. Cole, a substantial business man in Paducah who later became a purchaser, to inquire about the value of the Lovinses' property and outstanding liens against it. The attorney testified he advised Mr. Cole that he represented a creditor of the Lovinses and that they were indebted to his client in a sum in excess of $40,000. Mr. Cole advised the attorney that the properties had a value of $90,000.

On September 29, attorney Boyd talked with Mr. Lovins on the telephone. The former testified the latter advised that the Lovinses were changing their plans, were not leaving Paducah, and would give appellant a second mortgage on some or all of their property. A meeting was agreed upon for October 3. Within the next twenty-four hours the Lovinses made a cash sale of all of their real estate to appellee purchasers for $80,500, the deeds being recorded on October 1. What became of the net proceeds of this sale does not appear, but the Lovinses did not leave town for about a week thereafter. They may have paid some of their debts but they did not pay appellant. The judgment in this proceeding allowed appellant a recovery of approximately $70,000 against Jewell Lovins. (A substantial part of this debt apparently accrued or matured subsequent to the transactions above related.)

One other transaction should be noted. On August 23, the Lovinses had mortgaged a portion of the business property to their daughter, with the recited consideration of a pre-existing debt of $13,000. This appears to have been a fraudulent arrangement. However, the daughter joined in the conveyance of this property to the appellee purchasers on October 1. The consideration was paid by appellees to the Lovinses and consequently after the conveyance the daughter had no property or funds which could be subjected to the claims of their creditors.

As before mentioned, the Chancellor found no fraudulent intent on the part of the Lovinses in selling their property. This finding was apparently based on the fact that they had openly advertised their intention to go out of business, had put their property on the market for sale, and had received a fair price for it. If there was an intention to defraud, it may have had its inception after the sale. On the other hand, as contended by appellant, the mortgage to the daughter is substantial evidence of a fraudulent intent, as is likewise the immediacy of the sale after Mr. Lovins had made misrepresentations to attorney Boyd.

We believe it unnecessary to decide whether the Chancellor's finding on this issue was erroneous. Assuming appellant had forged this one link in the chain which would authorize the setting aside of these conveyances under KRS 378.010, we are unable to discover error in the finding of the Chancellor that appellees were good faith purchasers for value without notice of the fraudulent intent (assuming it to have existed).

KRS 378.010 provides in part:

"This section shall not affect the title of a purchaser for a valuable consideration, unless it appears that he had notice of the fraudulent intent of his immediate grantor * * *."

■ Appellant's claim that appellee purchasers participated in a fraudulent design of the Lovinses is based on inferences drawn from the circumstances. Appellant apparently places great significance on the conversation attorney Boyd had with appellee Cole on September 23, 1960. At most, however, this conversation gave notice to Cole (and those he represented) that a creditor was interested in the Lovinses' affairs and was particularly interested in the value of their real estate and the outstanding indebtedness against it. Even if Cole was made aware the Lovinses were indebted to appellant in the amount of $40,000, he estimated the value of the real estate at more than twice that figure. Certainly Cole was not advised, nor had he any knowledge, that the Lovinses were insolvent, or that they did not intend to pay their debts. No notice of an intent to defraud can be drawn from this telephone conversation.

■ Appellant next urges that the failure of appellees to employ attorney Boyd to examine the title to the property prior to the execution and recording of the deeds, in view of the fact that Boyd had theretofore represented some of the appellees, was an unusual and suspicious circumstance. We have difficulty attaching significance to this development. It is apparent all of the parties to the sale were interested in expediting the matter. Appellees had a perfect right to rely upon their own knowledge of this property (which was quite substantial) and another attorney who was involved in the transaction. Boyd's services were in no sense essential.

■ Appellant contends that on the basis of a conversation between attorney Boyd and another appellee, Nagel, *after* the conveyances were made, it appears the purchasers had no title examination made at all. Assuming this to be true, the taking of this risk by the purchasers has no bearing on the issue of notice of a fraudulent intent.

■ Appellant also emphasizes the speed of the sale transactions as showing such an unusual method of dealing as to indicate a nefarious purpose. While it is true the sales were consummated rather quickly, a reasonable explanation is apparent. The Lovinses were anxious to quit and sell out. The buyers, knowing this property well, had no reason to hesitate in grasping a bargain. A joint intent to defraud creditors cannot reasonably be inferred simply because the owner of property is willing to sell at a sacrifice and the buyer wishes to close the transaction before a good thing gets away. At least the Chancellor could properly decline to draw such an inference.

■■ It is contended the consideration for the conveyances was inadequate, there-

by indicating the purchasers were parties to some fraudulent design. Inadequacy is a relative term. On the question before us the consideration must be so disproportionate to the real value of the property as to raise a presumption (or a fair inference) of fraud. Carter v. Braswell, 186 Ky. 760, 217 S.W. 1019. No such disparity between the sale price and the market value of the real estate is here shown. There was a conflict of evidence as to whether the market value exceeded the price paid, and there was ample evidentiary support for the Chancellor's finding that it did not. Even assuming appellees purchased this property for $10,000 less than its market value (though no one else had offered as much), in view of the very substantial cash consideration paid it would be difficult indeed to infer that this circumstance made the purchasers a party to a plan to defraud the seller's creditors. Certainly the contrary finding of the Chancellor was not clearly erroneous.

■ Appellant insists the combination of circumstances was sufficient to put the purchasers on inquiry, citing Carter v. Richardson, 22 K.L.R. 1204, 60 S.W. 397; Campbell v. First National Bank of Barbourville, 234 Ky. 697, 27 S.W.2d 975, and other cases. Inquiry about what? That the Lovinses had creditors? Any going business has creditors. Knowledge that a proposed grantor is in debt does not charge a purchaser with notice that the former is selling to defraud his creditors. Isaacs' Adm'x v. Hignite, 265 Ky. 57, 95 S.W.2d 1116. Inquiry about the amount of indebtedness to appellant? The facts do not justify the imposition of such a duty on appellees. Had such inquiry been made it would have disclosed a sharply fluctuating creditor-debtor relationship which had apparently been satisfactory to appellant over a long period of years. Inquiry about the intentions of the Lovinses with respect to their plans to liquidate their obligations? We know of no rule of law or reason to require such a course of action and obviously a debtor would not disclose anything inimical to his interests.

■■ The statute was designed to protect purchasers as well as creditors. Ballard v. Security Bank, 219 Ky. 468, 293 S.W. 950. The buyer is not the guardian of the seller's creditors. Where valuable consideration is exchanged for property, unless the circumstances indicate more than is shown in this case, the purchasers cannot be held to have participated actively or constructively in a fraud upon the seller's creditors. See Hickman Bank & Trust Co. v. Pickard & Mayberry, 207 Ky. 772, 270 S.W. 30. On this issue we are unable to find in this record sufficiently substantial evidence to establish that the Chancellor committed error in his findings of fact or conclusions of law.

It is finally contended by appellant that even if appellees were innocent purchasers for value, the Chancellor should have subjected to appellant's claim the difference between the consideration paid by the transferees and the market value of the property conveyed. As we have heretofore observed, there was sharp issue as to whether such difference existed.

■ Assuming, however that appellees paid for the property less than its market value, the principle appellant seeks to invoke does not apply. It is only *after* a conveyance *has been set aside as fraudulent* that the question arises concerning the respective equities of the creditors and the transferees in the property or its proceeds. The rule appellant relies on is that *if* a conveyance is set aside, and *if* the purchaser had been guilty only of *constructive fraud* (being charged with notice), the purchaser may be entitled to reimbursement for the consideration paid and the creditor entitled to the excess of value over such consideration. 24 Am.Jur., Fraudulent Conveyances, section 124 (page 271); Wood v. Goff's Curator, 70 Ky. (7 Bush) 59; J. B. Colt Co. v. Brown, 242 Ky. 523, 46 S.W.2d 1074. The case of Security Bank v. Zimlich's

Ex'x, 261 Ky. 560, 88 S.W.2d 286, which appellant cites as controlling, does no more than recognize this rule. (In that case the court intimated that the conveyance should *not* have been set aside by the Chancellor, but since the transferee had not appealed from that decision, the only question was whether the transferee was entitled to the return of the consideration paid by him.)

In the present case the Chancellor determined, and we have in this opinion accepted such determination as correct, that appellees, the transferees, cannot be charged with either actual or constructive fraud in the acceptance of the conveyances. Therefore there is no proper ground on which to set them aside. Consequently we do not reach the question of the division of the property or its proceeds under the rule stated.

It is unnecessary to consider the question of estoppel asserted against appellant.

The judgment is affirmed.